618 So.2d 781 (1993)
Vasco Dagama THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 92-895.
District Court of Appeal of Florida, Fifth District.
May 21, 1993.
*782 James B. Gibson, Public Defender, and M.A. Lucas, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Nancy Ryan, Asst. Atty. Gen., Daytona Beach, for appellee.
HARRIS, Judge.
Appellant, Vasco Dagama Thompson, timely appeals a criminal contempt sentence imposed on him during his sentencing hearing for violating his probation on a kidnapping conviction.
Thompson was initially convicted of kidnapping on March 1, 1988, and sentenced to eight years of imprisonment followed by thirty years of probation. After his release, he violated his probation but was restored to supervision.
Thompson again violated his probation by contacting the victim of the kidnapping contrary to the conditions of his probation. At sentencing, Cynthia Webster, the victim, testified that appellant called her at work numerous times and on one occasion came to her place of employment. She further testified that he also came to her home. Thompson testified that the victim had invited him to her house and that he had never called her at her job. During the hearing the following transpired between Thompson and the court:
THE COURT: Do you want to call your client as surrebuttal?
[DEFENSE COUNSEL]: As rebuttal, yes, Your Honor. Go ahead, Mr. Thompson.
THE DEFENDANT: Your Honor, she made contact with me. She has been over to my house, too. Now, I don't want to act like I was just  been around her house one time. She been over to my house once, too. Twice she been over to my house. So it's not that I was trying to do anything to Ms. Webster or hurt her in any kind of way or do anything to her. She has been over to my house and slept over at my house. You ask her that. So there's no reason for him to try to put me back in the penitentiary for this here.
THE COURT: The reason is you were ordered not to have any contact with her, period, period, no ifs, ands or buts. I don't know how a police officer on the street corner is going to know what the conditions of your probation are or why you think that a police officer can give you authority to contact somebody when the Judge has ordered no, N-O, contact.
THE DEFENDANT: She came around my house first, Your Honor. She made contact with me first. What was I supposed to do? I told her I wasn't supposed to have 

*783 THE COURT: Okay. I didn't ask for a response. Do you have anything else, Mr. Manno?
[DEFENSE COUNSEL]: No, Your Honor.
Closing arguments followed, after which the trial judge pronounced Thompson guilty, finding, in part, that he had lied under oath during the hearing when he denied that he made any calls to the victim. The following then occurred:
THE COURT: ... Also, you tested positive on the 18th of January, 1991, to the presence of cannabis and cocaine in your system.
THE DEFENDANT: All those were dropped, Your Honor. All them charges were dropped.
THE COURT: Subject has a balance due to the victim, Cynthia Webster, of five thousand five hundred and eighty-two dollars, and I understand nothing has been paid on that; is that correct?
PROBATION OFFICER: That's correct, Your Honor.
THE DEFENDANT: He couldn't locate her.
THE COURT: What?
THE DEFENDANT: He couldn't locate her. I was trying to pay her, and he say he couldn't find her so there wasn't no sense in us paying.
THE COURT: That's not  It's paid in to the probation officer and then he finds her.
THE DEFENDANT: That's the one that told me he couldn't find her.
THE COURT: Okay. Mr. Thompson, the Court hereby adjudicates you to be in violation of your probation and sentences you to forty years Department of Corrections with credit for eight years time served, plus fifty-three days, plus a hundred and twenty-three days, a total of a hundred and seventy-six days plus eight years.
You should be advised you have a right to appeal the judgment and order of the Court. Any appeal must be taken in writing within thirty days.
[DEFENSE COUNSEL]: Judge, just for the record, we would oppose the imposition of a forty-year sentence in that I think this was a pre-guidelines case. I think that under the guidelines he falls less. He falls in the twenty-two range in the permitted based on the scoresheet that the state has prepared.
THE COURT: The crime occurred in 1987, and he was sentenced in 1987. I assume he was sentenced under the guidelines.
THE STATE: I believe he was.
[DEFENSE COUNSEL]: Well, under the guidelines he couldn't have gotten forty years, I mean, not with the score sheet that has been prepared.
THE DEFENDANT: That's all I had, was a hundred points, you know.
THE COURT: Well, I'm imposing the suspended sentence that Judge Coleman imposed. He knew the terms of it and he violated, and he gets the suspended sentence. If y'all want to review it, you can come back with argument to me in a motion for resentencing. If the law says it can't be done, it will be vacated and sentenced according to what the law requires. All right.
THE DEFENDANT: How much time that is, Your Honor, you said?

THE COURT: What cause have you got to show why you should not be held in contempt of court for interrupting this Court?

THE DEFENDANT: Because I don't understand what's going on.

THE COURT: No legal cause having been shown why you should not be held in contempt, it's the judgment and order of this Court that you are held in contempt and sentenced to one hundred and eighty days in the Orange County Jail to be run consecutive to any other sentence with no credit for time served. Take him out.

The VOP order states:
Court found Defendant in direct contempt of court for interrupting court proceedings & sent. to 180 days OCJ w/o CR T/S consecutive to any other sentence and above sentence.
*784 Thompson filed a direct appeal and pro se motions for modification of his sentence. This court relinquished jurisdiction to allow for correction of the sentence. Thompson was then resentenced to 17 years in prison with credit for 8 years and 268 days time served.[1] The 180-day consecutive contempt sentence was renewed. It is only the contempt sentence that is before us now.
Thompson argues that the transcript does not support the court's finding of contempt. We agree and reverse.
Criminal contempt requires some willful act or omission calculated to hinder the orderly functions of the court. Sewell v. State, 443 So.2d 164 (Fla. 1st DCA 1983). An act which is calculated to embarrass, hinder or obstruct the trial court in the administration of justice or which is calculated to lessen its authority or dignity constitutes contempt. Thompson v. State, 398 So.2d 514 (Fla. 2d DCA 1981). However, where a judgment of contempt is not objectively supported by the court transcripts, it is procedurally defective. Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977).
Fischer v. State, 559 So.2d 319 (Fla. 3d DCA 1990), is factually similar to the instant case. In Fischer, a defendant was held in direct contempt of court for making certain remarks at trial. During proceedings, the defendant informed the court that he was not satisfied with his court appointed counsel and wanted to proceed pro se (allegedly because he had had little or no communication with the attorney prior to trial). The trial court warned the defendant that if he persisted he would be found in contempt. The defendant responded, "I don't understand nothing you're saying." He was then cited for contempt. On appeal, the Third District reversed, holding that the defendant's remarks did not degrade or obstruct the court process and therefore, the adjudication of contempt was error.
In the case before us, Thompson's first remarks to the court were not interruptions, but were made during his rebuttal testimony. His next remarks concerning restitution appear to have been in the way of explanation, not calculated to undermine the authority of the court. Moreover the judge never warned Thompson that he was speaking out of turn. The comments which appear to have triggered the contempt citation occurred just after the judge pronounced sentence when Thompson asked, "How much time that is, Your Honor, you said?" and in response to the court's question of why he should not be held in contempt, appellant stated, "Because I don't understand what's going on." Thompson's conduct simply does not justify the adjudication of contempt in this case.
REVERSED and REMANDED for further action consistent with this opinion.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] Thompson's scoresheet apparently showed him in the seventh cell with a permitted range from five and a half to twelve years. Because of the second VOP, the guidelines allowed an optional two-cell increase, placing him in the ninth cell with a permitted range of nine to twenty-two years. The validity of this sentence is not an issue in this appeal.