677 So.2d 863 (1996)
Jimmy Dell BOWEN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 93-03918, 94-01076.
District Court of Appeal of Florida, Second District.
May 29, 1996.
Rehearing Denied July 31, 1996.
*864 Appellant Pro Se.
Robert A. Butterworth, Attorney General, Tallahassee, and Kimberly D. Nolen, Assistant Attorney General, Tampa, for Appellee.

EN BANC
FRANK, Judge.
Jimmy Dell Bowen, convicted of second degree murder with a firearm, attempted first degree murder, and carrying a concealed weapon, has appealed on several grounds. We reverse because the trial court denied Bowen's request to represent himself, a right conferred by the Sixth Amendment to the Constitution of the United States. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
The record discloses that Bowen informed the trial court of his conflict and dissatisfaction with the public defender's office. His complaints were essentially expressions of general unhappiness with the attorney assigned to represent him and Bowen stated that he preferred to represent himself. The trial court questioned him to ascertain whether he was knowingly and intelligently waiving his right to counsel. Thus, the trial court inquired into his education and experience in criminal proceedings. It elicited that he had graduated from high school and had worked in a law library in a state prison for two years, and had represented himself in two criminal proceedings. The trial court, however, concluded that Bowen was not "competent" to represent himself:
He has not had a charge of this nature that carries a minimum mandatory penalty of twenty-five years in the Florida State Prison, which he didn't even know.
He's had two forays in the legal system representing himself, one of which apparently he wound up in the Illinois State Prison.
The other one I personally have to check the records to find out. You know, he claims that he got off that case, but I don't think he's competent, based on his high school diploma, to represent himself in a case of this nature.
The trial court properly undertook its Faretta function but it improperly denied Bowen self-representation because of its belief that he was not competent to provide his own defense. Notwithstanding that the trial court did not express a basis for its determination that Bowen was not "competent" to fulfill self-representation, there is no doubt that it focused exclusively upon whether Bowen could provide himself with a substantively qualitative defensea fair trial.
*865 "The `competent' language in Faretta is directed at the `knowing and voluntary' nature of the defendant's choice, not at the ability of the defendant to mount a successful defense." Peters v. Gunn, 33 F.3d 1190, 1192 (9th Cir.1994). See also United States v. McKinley, 58 F.3d 1475 (10th Cir.1995). The trial court's error derived from its failure to recognize the controlling distinction between Bowen's technical competency to self-represent and his competence to understand the "significance and consequences of [his] decision.... See Faretta v. California, supra, 422 U.S., at 835, 95 S.Ct. at 2541." Godinez v. Moran, 509 U.S. 389, 399-402, n. 12, 113 S.Ct. 2680, 2687, n. 12, 125 L.Ed.2d 321 (1993). "Indeed, the Supreme Court's decision in Godinez explicitly forbids any attempt to measure a defendant's competency to waive the right to counsel by evaluating his ability to represent himself." United States v. Arlt, 41 F.3d 516, 518 (9th Cir.1994). In sum, the conclusion reached by the trial court cannot survive the Faretta strictures.
The trial court may not force a lawyer upon the defendant. "It is the defendant... who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of `that respect for the individual which is the lifeblood of the law.'" Faretta, 422 U.S. at 834, 95 S.Ct. at 2540-41 (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (Brennan, J., concurring)). Here, the trial court followed the path our courts created when pre-Faretta jurisprudence was imported into our post-Faretta decisions. It is beyond question from the record before us that Bowen waived his right to counsel voluntarily and intelligently. He was educated, competent, and uncoerced. Once the trial court determined that he had made an uncoerced election, and he had been informed of the perils of self-representation, Bowen had a Sixth Amendment right to proceed without counsel. Faretta. Thus, today we must recede from that line of cases infected by our earlier, but now erroneous, perception of the right to self-representation. Concern with the ability of a self-representing defendant to conduct a "fair trial" plays no part in the Sixth Amendment right to self-representation.
In Cappetta v. State, 204 So.2d 913 (Fla. 4th DCA1967), rev'd on other grounds, 216 So.2d 749 (Fla.1968), cert. denied, 394 U.S. 1008, 89 S.Ct. 1610, 22 L.Ed.2d 787 (1969), the Fourth District considered, pre-Faretta, the constitutionality of the denial of a defendant's motion to conduct his own defense, and followed the precedent from federal and Florida courts holding that to force counsel upon the accused would infringe upon constitutional rights. The Cappetta court concluded:
[T]his court holds to the general rule that in the absence of unusual circumstances an accused who is mentally competent and sui juris has the right to conduct his own defense without the aid of counsel.
204 So.2d at 917 (emphasis supplied). The Fourth District, however, enumerated the "unusual circumstances" to be considered:
whether the accused by reason of age, mental derangement, lack of knowledge, or education, or inexperience in criminal procedure would be deprived of a fair trial if allowed to conduct his own defense, or in any case, where the complexity of the crime was such that in the interest of justice legal representation was necessary. The right of an accused to represent himself without assistance of counsel is not so absolute that it must be recognized when to do so would jeopardize a fair trial on the issues.
204 So.2d at 918.
In Robinson v. State, 368 So.2d 674 (Fla. 1st DCA 1979), the First District followed Faretta in requiring the trial court to inquire whether the defendant was making a knowing, intelligent, and voluntary decision. The First District, citing Cappetta, emphasized the special circumstance of deprivation of a fair trial, even though that specific inquiry is not a part of the Faretta standards in assessing the right of self-representation. Our court subsequently in Williams v. State, 427 So.2d 768 (Fla. 2d DCA 1983), relied upon both Cappetta and Robinson for the "special circumstances" test, and then in Matthews v. State, 584 So.2d 1105 (Fla. 2d DCA 1991), we *866 perpetuated the necessity for a more stringent examination of the defendant by referring to Williams. Most recently, in Jones v. State, 658 So.2d 122 (Fla. 2d DCA 1995), the specially concurring opinion identified those circumstances that trial courts could follow in resolving self-representation issues, including the considerations set forth in Matthews and Williams.
We emphasize, without reservation, that we do not intend to suggest that the trial court should not delve into those matters that have been labelled "special circumstances." In fact, Faretta requires that the defendant's age, education, mental status, and experience with criminal proceedings be subjects of inquiry. See Taylor v. State, 605 So.2d 958 (Fla. 2d DCA 1992). Those factors, however, bear exclusively on whether the defendant has made a knowing and intelligent waiver and not whether the defendant's responses would indicate exposure to an unfair trial. Florida Rule of Criminal Procedure 3.111(d)(3) specifically lists the factors in its implementation of the Faretta decision. See State v. Young, 626 So.2d 655 (Fla.1993); Fitzpatrick v. Wainwright, 800 F.2d 1057 (11th Cir.1986). In short, once the trial court has reached a determination that the defendant's self-representation decision meets the Faretta standards, the Sixth Amendment right may not be subordinated to anticipated pragmatic concerns associated with the convenient operation of the courtroom, delay in the process and the maintenance of the customary flow of courtroom events. Obviously, if courtroom environment reaches the point where it becomes insufferable, the assistance of counsel can be imposed upon the self-represented defendant.
We are quick to acknowledge at this juncture in our review process that more often than not the criminal defendant will not possess the skill to conduct a trial as neatly and competently as appointed counsel. In McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Supreme Court commented in dicta that Faretta "held that an accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol."[1] 465 U.S. at 172-73, 104 S.Ct. at 948. We, no differently than the United States Court of Appeals for the Ninth Circuit, "merely interpret McKaskle as permitting denials of the Faretta right to an accused who is unable to abide by rules of courtroom procedure, just as the right may be denied to those who are unwilling so to do." Savage v. Estelle, 924 F.2d 1459, 1466 (9th Cir.1990), cert. denied, 501 U.S. 1255, 111 S.Ct. 2900, 115 L.Ed.2d 1064 (1991).[2] We do not perceive McKaskle to mean that the Supreme Court has expanded the elemental Faretta concept to include the notion of "able and willing to abide by rules of procedure and courtroom protocol" as additional standards governing a trial court's implementation of the Sixth Amendment's right of self-representation. Moreover, we are not reluctant to note that a defendant's self-representation may cause anxious moments in the preservation of established procedures and protocol. Honoring the constitutional right of self-representation, however, does not diminish the trial court's authority or power to control the courtroom. "As governor of the trial, the trial judge must have the authority necessary to ensure the orderly and expeditious progress of the proceedings. His directives in exercise of this authority must be obeyed; otherwise the clear result would be courtroom chaos. Wholly arbitrary limits on argument will, if prejudicial, merit reversal of the substantive case, but that hardly can excuse open defiance of the court's commands." United States v. Seale, 461 F.2d 345, 371 (7th Cir.1972). We find *867 nothing in McKaskle`s reference to "rules of procedure and courtroom protocol" to suggest that disruptive or offensive behavior cannot be regulated through customary judicial authority in the circumstance where a defendant is providing self-representation. The Sixth Amendment right does not license courtroom misconduct.
We find at least oblique support for our decision today from cases originating in the Florida Supreme Court. First, we recognize that the United States Court of Appeals for the Eleventh Circuit has noted the error of the Cappetta holding and has rejected what the state had argued was the "well established rule" that the right of a defendant to represent himself depended upon the trial court's determination as to whether or not he has the requisite skills to represent himself effectively. Orazio v. Dugger, 876 F.2d 1508 (11th Cir.1989). That court was convinced that the Florida Supreme Court, which had not thoroughly reached this issue following Faretta, would not adhere to a rule that was in conflict with a decision of the United States Supreme Court.
In fact, prior to our Matthews decision, the Florida Supreme Court observed that the trial court had "conducted an appropriate inquiry to satisfy itself that defendant was competent to exercise his right to self-representation and was determined to do so.... The record affirmatively shows that defendant was literate, competent, and understanding, that he was voluntarily exercising his informed free will, and that the court made it explicitly clear that it thought defendant was making a mistake in refusing to accept the appointment of counsel." Jones v. State, 449 So.2d 253, 257 (Fla.), cert. denied, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). This language mirrors the Faretta holding and certainly indicates that our supreme court is not inclined to restrict unduly the accused's right of self-representation.
Although our supreme court acknowledged Cappetta with approval in Johnston v. State, 497 So.2d 863 (Fla.1986), cert. denied, ___ U.S. ___, 115 S.Ct. 1262, 131 L.Ed.2d 141 (1995), and in Smith v. State, 407 So.2d 894 (Fla.1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982), in each instance Cappetta was relied upon simply to undergird the proposition that a mentally competent defendant has the right to conduct his own defense without counsel. When analyzing the waiver criteria, however, the court in Smith looked to the Faretta standard rather than to Cappetta's "special circumstances" test. In Johnston, the court concluded that the circumstance of the defendant's mental condition rendered his waiver of counsel neither knowing nor intelligent and that the trial court had applied Faretta properly to the situation before it.
We do not gainsay that recession from the "fair trial" standard may create a potential for less than perfect trials, but our decision today is meant to bring our court in line with the spirit of Faretta and to prevent an overly restrictive exercise of the constitutional right to self-representation. The incipient possibility for the abuse of discretion by trial courts in denying self-representation in order to secure more orderly trials is real and is reflected to some degree in the case before us. Nonetheless, we must recede from Williams v. State, 427 So.2d 768 (Fla. 2d DCA 1983), and Matthews v. State, 584 So.2d 1105 (Fla. 2d DCA 1991), to the extent that these opinions engraft a "fair trial" standard upon the Faretta test, and we disapprove steps four through six of the Faretta inquiry in Jones v. State, 658 So.2d 122 (Fla. 2d DCA 1995) (Altenbernd, J., specially concurring), which relied upon Williams and Matthews.
The order denying Bowen's motion to represent himself is reversed and this matter is remanded for a new trial consistent with Bowen's right prescribed in Faretta.
We certify the following question as one of great public importance:
ONCE A TRIAL COURT HAS DETERMINED THAT A DEFENDANT HAS KNOWINGLY AND INTELLIGENTLY WAIVED HIS OR HER RIGHT TO COUNSEL, MAY THAT COURT NONETHELESS REQUIRE THE DEFENDANT TO BE REPRESENTED BY COUNSEL BECAUSE OF CONCERN THAT THE DEFENDANT MIGHT BE DEPRIVED OF A FAIR TRIAL IF TRIED WITHOUT SUCH REPRESENTATION?
*868 DANAHY, PARKER, PATTERSON, ALTENBERND, BLUE, LAZZARA, FULMER and QUINCE, JJ., concur.
SCHOONOVER, J., concurs in part and dissents in part with opinion in which THREADGILL, C.J., and RYDER, CAMPBELL, and WHATLEY, JJ., concur.
SCHOONOVER, Judge, concurring in part and dissenting in part.
Contrary to the majority's holding that the trial court properly undertook its Faretta function but then improperly denied the appellant his implicit Sixth Amendment right to represent himself, I would hold that the record does not indicate that the appellant waived his explicit Sixth Amendment right to counsel, or that he clearly and unequivocally requested his implicit Sixth Amendment right to represent himself.
Because there was not an adequate inquiry to determine which right the appellant wanted to exercise and which right he wanted to waive, it is not possible to determine whether the waiver or the exercise of either right was valid. I, accordingly, agree with that portion of the majority decision which reverses and remands for a new trial.
Although I agree that the appellant is entitled to a new trial, I do not agree (1) that the factual basis and statement of the case used to support the majority opinion is complete, or correct, (2) that even if we assume the appellant clearly and unequivocally requested to represent himself, that the court conducted a proper Faretta inquiry and then erred by not allowing the appellant to represent himself, (3) that the appellant was attempting to exercise his right, under the United States and Florida Constitutions, to represent himself and waive his right to representation, (4) that in determining that the appellant was not competent to represent himself the trial court "focused exclusively upon whether Bowen could provide himself with a substantively qualitative defensea fair trial," or (5) that it is necessary, or correct, to proceed en banc to disapprove of parts of a concurring opinion that has no precedential value or recede from other decisions that do not properly control the disposition of this case.

Trial Court Proceedings
The appellant, Jimmy Dell Bowen, also known as Cornelius P. Baker, was charged with first degree murder, attempted first degree murder, and carrying a concealed weapon as the result of an incident which occurred outside of a bar in Hillsborough County, Florida. According to testimony presented during the appellant's trial, the appellant, the murder victim, the victim of the attempted murder, and others were drinking inside of the bar when the appellant and the victim of the attempted murder began arguing. Although the evidence is conflicting, the argument centered around cock fighting and dog fighting. The argument escalated to the point that the two of them, followed by the murder victim and others, went outside the bar. A short time later the appellant shot the two victims. One of the victims died and the other recovered. When the appellant was arrested he had a weapon on his person and was, therefore, in addition to being charged with first degree murder and attempted first degree murder, charged with carrying a concealed weapon.
Several months after the appellant was arrested, he filed a written motion requesting the court to allow the public defender to withdraw (a copy is attached hereto). The motion alleged that certain irreconcilable conflicts existed between the appellant and his counsel. It also alleged that the public defender was understaffed and overburdened with cases to the extent that said office had become incompetent in his case.
At the hearing on this motion, the court, before hearing any testimony or argument on the motion, told the appellant: "The choices are, I've appointed Mr. Lopez who has extensive experience in capital cases. You have that choice, or, you can represent yourself." After the appellant told the court that he would have to represent himself rather than agreeing to go to trial with the public defender's office, the court asked the appellant to detail his educational experience. The appellant testified that he believed that he graduated from high school in 1955 and that he worked in a prison law library for two years. He also testified that he had been allowed to represent himself in the past. The trial *869 judge then asked the appellant's attorney to give his educational background and then supplemented the attorney's answers by asking several leading questions setting forth the attorney's experience and reminding him that he had at one time been her supervisor. The penalty for the murder charge, but not the other charges, was discussed with the appellant and the trial judge then told him that she did not think he should represent himself and advised him of various problems with attempting to do so. The court then had the attorney explain what he had done up to that point in the case. After the state and the appellant had nothing to add, the court stated that it was going to deny the motion because, "based upon my inquiry, I don't think Mr. Bowen is competent to represent himself." The court made no inquiry concerning the first ground set forth in the appellant's motion, i.e. that a conflict of interest existed.
The matter proceeded to a jury trial and at the close of the state's case in chief, the appellant orally moved to terminate the services of his attorney on the grounds of incompetency. Although his attorney concurred in the motion, the court denied it. During argument on the motion, the following questions were asked by the appellant's own attorney:
MR. LOPEZ: Do you want to conduct your own defense?
THE DEFENDANT: No.
MR. LOPEZ: Are you certain of that?
THE DEFENDANT: No. I just want someone to conduct it properly.
The next day, with the court's permission, the appellant filed two written motions (copies are attached hereto). The first motion was a request to represent himself in presenting the second motion which was entitled "MOTION FOR APPOINTMENT OF COUNSEL OTHER THAN PUBLIC DEFENDER." The four page motion concluded by contending that the public defender could not provide adequate representation due to case overload, conflict of interest, compromise of ethics, and abandonment of loyalty to the appellant. The appellant once again did not ask to represent himself but requested the court to appoint counsel other than the public defender. The trial court made no inquiry and refused to grant the motion. After the presentation of the appellant's evidence, he once again requested that another attorney be appointed. Without an adequate inquiry the court denied the motion. A request to make his own closing argument was made by the appellant but later withdrawn.
The jury found the appellant guilty of the lesser included offense of second degree murder with a firearm on count I of the indictment and guilty as charged on the remaining counts. After the appellant was adjudicated guilty and sentenced, he filed a timely notice of appeal.

Adequacy Of The Faretta Inquiry
If I assume, as the majority has, that the appellant clearly and unequivocally sought permission to represent himself, I believe that the trial court's Faretta inquiry was inadequate and not sound support for a finding that the appellant made a knowing and intelligent waiver of his right to counsel.[3]
According to the majority opinion, the trial court properly undertook its Faretta function by inquiring into the appellant's education and experience in criminal proceedings, and elicited that he had graduated from high school, had worked in a law library in a state prison for two years, and had represented himself in two criminal proceedings. Based upon the trial court's inquiry, the majority concludes that "[i]t is beyond question from the record before us that Bowen waived his right to counsel voluntarily and intelligently. He was educated, competent, and uncoerced." I do not agree.
In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that when an accused elects to represent himself he relinquishes many of the traditional benefits associated with the right to counsel and, therefore, in order to represent himself he must *870 knowingly and intelligently forego those relinquished benefits. In Faretta, the court found that the record affirmatively showed that Faretta was literate, competent, and understanding and, therefore, that he was improperly denied his constitutional right to conduct his own defense. The record in the Faretta case is not before us and, accordingly, it cannot be determined what that record reflected. In this case, however, the record is before us, and as mentioned above, I do not believe an adequate inquiry was made to determine that the appellant was not competent to represent himself. Further, the record does not support the majority's holding that he should have been allowed to represent himself.
In Johnston v. State, 497 So.2d 863 (Fla. 1986), our supreme court citing both State v. Cappetta, 216 So.2d 749 (Fla.1968), cert. denied, 394 U.S. 1008, 89 S.Ct. 1610, 22 L.Ed.2d 787 (1969), and Florida Rule of Criminal Procedure 3.111(d)(3), held that a defendant's right to self-representation is not absolute and he will not be allowed to waive his right to counsel if he is unable to make an intelligent and understanding choice because of, among other things, his mental condition. The Johnston court said further that in determining whether a defendant has knowingly and intelligently waived his right to counsel, a trial court should inquire into, among other things, the defendant's age, mental status, and lack of knowledge and experience in criminal proceedings. The court in Johnston said: "Clearly, the trial court was correct in concluding that Johnston would not receive a fair trial without assistance of counsel." Johnston, 497 So.2d at 868. Rule 3.111(d)(3) provides: "No waiver shall be accepted if it appears that the defendant is unable to make an intelligent and understanding choice because of a mental condition, age, education, experience, the nature or complexity of the case, or other factors."
In this case, the court asked the appellant when he graduated from high school, about his legal research while in prison in another state, and about the two times he evidently represented himself. The court then discussed the penalty for one of the charges against the appellant and told him that if he represented himself he would have to comply with the rules and that the court could not help him. The trial judge also told him that she did not think he should represent himself.
The court did not advise the appellant of the penalties involved in all of the charges placed against him, did not ask him if he had any mental problems or if he had been hospitalized or treated for a mental illness, if he was married, had any children, what he did for a living at the time of his arrest and at other times throughout his life, how much of his life had been spent in prison and for what, if he used drugs or alcohol to excess, if he had any physical disabilities such as loss of hearing, and did not question him enough to ascertain if his experience resulted in his having any knowledge that would assist him in representing himself. The court also did not discuss with the appellant the complexity of the case or any defenses or ascertain if he had been threatened or coerced in any way. See Townes v. U.S., 371 F.2d 930 (4th Cir. 1966), cert denied, 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967). This inquiry was inadequate. Jones v. State, 584 So.2d 120 (Fla. 4th DCA 1991); Hayes v. State, 566 So.2d 340 (Fla. 2d DCA 1990). See Crystal v. State, 616 So.2d 150 (Fla. 1st DCA 1993); Taylor v. State, 605 So.2d 958 (Fla. 2d DCA 1992); Perkins v. State, 585 So.2d 390 (Fla. 1st DCA 1991). See also State v. Young, 626 So.2d 655 (Fla.1993).

The Appellant Did Not Attempt To Represent Himself
The discussion above concerning the adequacy of the trial court's Faretta inquiry is based upon the assumption that the appellant was attempting to represent himself. If an accused requests the right to represent himself, a Faretta inquiry is necessary to determine if he has waived his explicit right to the assistance of counsel. Faretta. In this case, however, I would find that the appellant was not attempting to waive that right but was instead attempting to exercise his right to the assistance of counsel.
There is nothing in the record to establish that the appellant expressly rejected all assistance of counsel and clearly and unequivocally requested to represent himself. The *871 record reflects that throughout the proceedings the appellant was attempting to exercise his right to counsel, just not the counsel provided to him. The appellant's pro se motion seeking to allow the public defender's office to withdraw was based upon the grounds that an irreconcilable conflict of interest had arisen between the appellant and his counsel and that the public defender's office was incompetent. The appellant did not ask to represent himself. At the hearing on this motion, before considering the grounds set forth in the motion, the trial court commenced the hearing by stating: "The choices are, I've appointed Mr. Lopez who has extensive experience in capital cases. You have that choice, or, you can represent yourself. If you decide to represent yourself I need to make further inquiry as far as your educational background, so it's up to you." The court continued by stating: "Do you want me to hear the Motion to Withdraw at this point? And then I'll need to make inquiry as far as your representation of yourself." In response to the choices given him, the appellant stated: "Well, I'm not going to trial with the Public Defender's Office. I'll have to represent myself." The court then made the inadequate inquiry referred to above, questioned the appellant's attorney concerning his competency, and denied the motion. The court never questioned the appellant concerning the alleged conflict of interest and never ruled that the lack of a conflict had been established.
As mentioned above, at the close of the state's case in chief, the appellant, once again, orally moved to terminate the services of his attorney on the grounds of incompetency. The appellant informed the court that he did not want to conduct his own defense and just wanted someone to conduct it properly. Although his attorney concurred in the motion, the court denied it.
The next day the appellant filed the written motions which are attached hereto. The first motion was a request to represent himself in presenting the attached motion for appointment of counsel other than the public defender. The four page motion concluded by asserting that the public defender could not provide adequate representation due to case overload, conflict of interest, compromise of ethics, and abandonment of loyalty to the appellant. The appellant requested the court to appoint counsel other than the public defender but did not ask to represent himself. That motion was denied without any discussion concerning the grounds set forth in the motion.
After the presentation of the appellant's evidence, he once again requested that another attorney be appointed. That motion was also denied. The appellant never clearly and unequivocally requested to represent himself. Keene v. State, 420 So.2d 908 (Fla. 1st DCA 1982), petition for review denied, 430 So.2d 452 (Fla.1983).
I realize that even though an accused does not expressly and unequivocally request to represent himself, his actions can result in a determination that, under the law, if he meets the Faretta requirements, he must represent himself. Hardwick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). In such a case, however, a different procedure must be followed. Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), approved Hardwick. In this case, the Faretta inquiry was inadequate and the Nelson requirements were not followed. Under Nelson, where an accused desires to discharge his court appointed counsel, the court should make an inquiry of the accused as to the reason for the request to discharge. If incompetency of counsel is assigned as the reason, or one of the reasons, as in this case, the court should make a sufficient inquiry of the defendant to determine if the defendant is receiving effective assistance. Nelson. (Even if incompetency of counsel is not one of the reasons, the court must still consider the reason given.) If the court determines that there are reasonable grounds for the accused's complaint, counsel should be discharged and a new one appointed. If no basis for a finding of ineffectiveness is made, the court should so state and advise the defendant that if he discharges his counsel the state may not thereafter be required to appoint a substitute. If the accused continues to demand a dismissal, the court, subject to the requirements of Faretta, may require the defendant to proceed to trial *872 without representation by court appointed counsel. Nelson.
In this case, the appellant was told before the court even considered the motion that it was either the public defender or no one. This was error. Additionally, the trial court did not ask the appellant to be more specific as to the reasons for his claim and completely ignored the claim of conflict of interest. Without an adequate inquiry to determine whether there existed a conflict of interest which would prohibit the public defender's office from proceeding, the court could not properly inform the appellant that he was electing to represent himself and proceed to a Faretta inquiry. See Nelson.
Although it is not necessary for the disposition of this case, it should be noted that after the first motion was filed and heard, the court never conducted Nelson or Faretta inquiries when the subsequent oral and written motions seeking to have the public defender's office discharged were filed. The second written motion was more detailed and accordingly required a more detailed Nelson inquiry than was needed in connection with the first motion which was the only motion considered by the majority.

Focus Of Inquiry
The majority opinion states: "Notwithstanding that the trial court did not express a basis for its determination that Bowen was not `competent' to fulfill self-representation, there is no doubt that it focused exclusively upon whether Bowen could provide himself with a substantively qualitative defensea fair trial." This conclusion is necessary if we are going to proceed en banc and then recede from established law and conflict with the supreme court and other districts. I do not agree, however, that we should, based upon an inadequate inquiry wherein the court limited its questions to education and then found the appellant incompetent, look into the court's mind and determine without doubt that the trial court focused exclusively on whether or not the appellant could provide himself a fair trial. Since the conclusion reached by the majority is based upon an inference and is not necessary to the disposition of the case, I would not make it. I would instead save for another day the question of the limits of a citizen's Sixth Amendment rights and order a new trial for the reasons discussed above.

En Banc Consideration
Since this case may, and should be, disposed of without considering the need to recede from prior holdings of this court, it is not necessary to consider the matter en banc and I would not do so at this time. I also would not certify this question because the answer to it is not necessary to dispose of this matter. If we were properly considering this matter en banc, I would hold that the current opinions of this court should not be receded from because they are correct and in accordance with the established law of the United States Supreme Court, the Florida Supreme Court, and other district courts of appeal. See McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); Johnston v. State, 497 So.2d 863 (Fla.1986); Jones v. State, 658 So.2d 122 (Fla. 2d DCA 1995); Matthews v. State, 584 So.2d 1105 (Fla. 2d DCA 1991); Smith v. State, 512 So.2d 291 (Fla. 1st DCA 1987); Daniels v. State, 449 So.2d 950 (Fla. 2d DCA 1984); Smith v. State, 444 So.2d 542 (Fla. 1st DCA 1984); Morgano v. State, 439 So.2d 924 (Fla. 2d DCA 1983); Williams v. State, 427 So.2d 768 (Fla. 2d DCA 1983); Robinson v. State, 368 So.2d 674 (Fla. 1st DCA 1979); Cappetta v. State, 204 So.2d 913 (Fla. 4th DCA 1967), rev'd on other grounds, 216 So.2d 749 (Fla. 1968), cert. denied, 394 U.S. 1008, 89 S.Ct. 1610, 22 L.Ed.2d 787 (1969).
I, accordingly, concur in the result of the majority opinion only.
*873
 APPENDIX
IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT OF FLORIDA IN AND FOR 
 HILLSBOROUGH COUNTY 
STATE OF FLORIDA, CASE NO. 93-1740
 VS
 DIVISION F
JIMMY DELL BOWEN HON. SUSAN SEXTON
 MOTION FOR WITHDRAW OR TERMINATION OF COUNSEL
 OF RECORD 
 COMES NOW, JIMMY DELL BOWEN, DEFENDANT HEREIN, AND RESPECTFULLY REQUEST
THIS HONORABLE COURT TO ENTER ITS ORDER ALLOWING THE PUBLIC DEFENDER TO WITHDRAW
AS ATTORNRY OF RECORD FOR DEFENDANT. AND AS GROUNDS THEREFORE WOULD SHOW:
1. THAT CERTAIN IRRECONCILABLE CONFLICTS OF INTREST HAVE ARISEN BETWEEN
 COUNSEL AND DEFENDANT. AND THR UNDERSIGNED IS UNABLE TO CONTINUE WITH
 SAID COUNSEL, THE PUBLIC DEFENDERS OFFICE.
2. THAT THE PUBLIC DEFENDER IS UNDER STAFFED AND OVER BURDENED WITH CASES
 TO THE EXTENT THAT SAID OFFICE IS INCOMPETENT IN THE INSTANT CAUSE WHICH
 IS A CAPITAL OFFENSE.
 WHEREFORE, JIMMY DELL BOWEN, PRAYS THAT THIS HONORABLE COURT GRANT THIS
AND ENTER AN ORDER ALLOWING THE PUBLIC DEFENDERS OFFICE TO WITHDRAW AS COUNSEL
OF RECORD IN THE INSTANT CAUSE.
 RESPECTFULLY SUBMITTED
 
 DEFENDANT PRO SE
NOTICE AFFIDAVITAND PROOF OF SERVICE: AFFIANT
I HEREBY CERTIFY THAT A COPY OF THE FOREGOING HAS BEEN FURNISHED TO THE
OFFICE OF CLERK OF CIRCUIT COURT OF HILLSBOROUGH COUNTY, HILLSBOROUGH
COUNTY COURTHOUSE, P. O. BOX 1110, TAMPA, FL. 33601.
SUBSCRIBED AND SWORN BEFORE ME THIS ____DAY IF ____
_______________________________________ 
NOTARY PUBLIC MY COMMISSION EXPIRES_____________
 
*874
 
IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT OF FLORIDA
 IN AND FOR HILLSBOROUGH COUNTY FLORIDA
STATE OF FLORIDA CASE NO. 93-1740
 v DIVISION-
JIMMY DELL BOWEN HON. 
 MOTION TO PRROCEED PRO SE
JURISDICTION: JURISDICTION IS HEREBY INVOLKED THROUGH THE
CONSTITUTION OF THE STATE OF FLORIDA ART. I SEC. 16. "THAT AN
ACCUSED HAS THE RIGHT TO BE HEARD IN PERSON, BY COUNSEL. OR BOTH."
COMES NOW, JIMMY DELL BOWEN, DEFENDANT PRO SE AND MOVES THIS
HONORABLE COURT FOR PERMISSION TO PROCEED PRO SE IN THIS CAUSE
WHICH IS ATTACHED HERETO.
 RESPECTFULLY SUBMITTED
 
 DEFENDANT PRO SE
*875
IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT OF FLORIDA
 IN AND FOR HILLSBOROUGH COUNTY FLORIDA
STATE OF FLORIDA CASE NO. 93_-1740
 V
JIMMY DELL BOWEN DIVISION_________
 HON._____________
 MOTION FOR APPOINTMENT OF COUNSEL OTHER THAN PUBLIC DEFENDER
 COMES NOW JIMMY DELL BOWEN, DEFENDANT PRO SE, AND RESPECTFULLY
REQUEST THIS COURT TO APPOINT COUNSEL OTHER THAN THE PUBLIC DEFENDER,
AND IN SUPPORT THEREOF WOULD SHOW:
(1) THAT THE PUBLIC DEFENDERS OFFICE, IN THE INSTANT CASE, IS INADAQUENT
 TO THE EXTENT THAT DEFENDANTS SIXTH AMENDMENT RIGHTS HAVE BEEN VIOLATED
(2) THAT THE PUBLIC DEFENDERS ASSISTANTS ARE OVERBURDENED WITH AN AVERAGE
 CASE LOAD OF SIXTEY CASES PER ATTORNEY, INCLUDING DEFENDANTS ATTORNEY
 WHO HAS FIVE MURDER CASES. WITH SUCH CASE LOAD IT IS PHYSICALLY IMPOSSIBLE
 FOR SAID ATTORNEY TO DEVOTE THE NECESSARY TIME TO PREPAIR AN
 ADAQUENT, INTELLEGENT DEFENSE IN THE INSTANT CASE, THEREBY PRECLUDING
 ANY SEMBELENCE OF "ADAQUENT COUNSEL" IN THIS MURDER CASE.
(3) THAT THE PUBLIC DEFENDERS INVESTIGATORS, AT LEAST IN THE INSTANT CASE
 IS SO WOEFULLY INADAQUENT THAT HE COMPOUNDS THE INJUSTICE BY FAILURE TO
 ADAQUENTLY CONDUCT ANYTHING REMOTELY RESEMBELING AN INVESTIGATION BE
 cause;
(A) IN SIX MONTHS, SAID INVESTIGATOR AND ATTORNEY HAS FAILED TO GET REPORTS
 THAT ARE CRUCIAL TO DEFENSE IN THIS CASE.
(B) THAT SAID INVESTIGATOR HAS CONTACTED ONLY TWO OF DEFENDANTS WITNESSES
 AND THEN, FAILED TO CARRY WITH HIM A PHOTO OF ALLEGED VICTIMS SO
 WITNESSES COULD VERIFY IDENTIFICATION OF ALLEGED VICTIMS.
*876
(C) THAT SAID COUNSEL AND OR INVESTIGATOR, HA FAILED TO INTERVIEW
 AND OR DEPOSE WITNESSES FAVORABLE TO DEFENSE, EVEN
 THOUGH THE DEFENDANT HAS INFORMED SAID COUNSEL THAT SOME IF
 NOT MOST OF SAID WITNESSES ARE TRANSIENTS AND SUBJECT TO MOVE
 WITH FLOW OF EMPLOYMENT AND FOREVER BE LOST TO DEFENDANT DUE
 TO COUNSEL'S SIX MONTH'S OF PROCRASTINATION.
(D) THAT SAID COUNSEL MANUEL LOPEZ, HAS FAILED TO INTERVIEW
 AND OR DEPOSE AS HOSTILE WITNESSES THE FOLLOWING: LENO
 RODRIGUEZ AND WILLIE GARCIA, CO-OWNERS OF LEO'S BAR, 1948
 EAST HILLSBOROUGH AVENUE. SAID BAR IS KNOWN FOR GAMBLEING
 LOAN SHARKING AND RACKETEERING ACTIVITIES. DEFENDANT FEARS
 THAT HIS APPOINTED COUNSEL HAS COMPRIMISED HIS ETHICS IN
 THIS CASE BECAUSE OF HIS FRIENDSHIP AND/OR ACQUAINTANCE OF
 ATTORNEY WILLIE GARCIA. DEFENDANT'S FEARS ARE BASED ON THE
 FACT THAT MANUEL LOPEZ WAS AND IS AWARE OF AN INVESTIGATION
 CONCERNING LOAN SHARKING AND RACKETEERING AT SAID BAR WHOSE
 CO-OWNER IS ATTORNEY WILLIE GARCIA. MOREOVER, SAID COUNSEL
 MANUEL LOPEZ HAS FAILED TO INVESTIGATE THE POTENTIAL FOR DEFENSE
 PURPOSES, THAT ALLEGED VICTIMS IN THIS CAUSE WERE
 "ENFORCERS OR COLLECTORS" IN THE LOAN SHARKING ENTERPRISE
 THAT WAS AND IS CONDUCTED AT LEO'S BAR, 1948 EAST HILLS BOROUGH
 AVE., OWNED BY ATTORNEY WILLIE GARCIA AND LEND
 RODRIGUEZ.
(E) IN OSBORNE vs SHILLINGER, 861 F.2d 612 (10th CIR. 1988) THE
 COURT HELD THAT "INADEQUATE PREPARATION OF DEFENSE AND
 FAILURE TO INVESTIGATE OTHER POTENTIAL DEFENSES INEFFECTIVE
 ASSISTANCE OF COUNSEL". Id 627
(F) WHEN AN ACTUAL CONFLICT OF INTEREST IS DEMONSTRATED, PREJUDICE
 IS PRESUMED BECAUSE "COUNSEL BREACHES THE DUTY OF
*877
 LOYALTY, PERHAPS THE MOSTBASIC OF COUNSEL'S DUTIES." OSBORNE
 626 QUOTING STICKLAND vs WASHINGTON, 466 U.S. at 686, 104 S.
 Ct. at 2064.
(G) IN McMANN vs RICHARDSON, 397 U.S. 759, 771 n 14 (1970) THE
 COURT HELD THAT "SIXTH AMENDMENT RIGHT TO COUNSEL IS RIGHT TO
 EFFECTIVE ASSISTANCE OF COUNSEL". SEE OSBORNE 624-625.
(H) "THE RIGHT TO EFFECTIVE ASSISTANCE APPLIES TO BOTH RETAINED
 AND APPOINTED COUNSEL". CUYLER vs. SULLIVAN, 861 F.2d 612
 (10th CIR 1980)
(I) IN STICKLAND, THE SUPREME COURT CONSIDERED WHEN A DEFENSE
 ATTORNEY MAY BE CONSTITUTIONALLY INEFFECTIVE "SIMPLY BY
 FAILING TO RENDER `ADEQUATE LEGAL ASSISTANCE'". SEE
 OSBORNE 625
(J) AN EFFECTIVE ATTORNEY "MUST PLAY THE ROLE OF AN ACTIVE
 ADVOCATE, RATHER THAN A MERE FRIEND OF THE COURT." EVICTS
 vs. LUCEY, 469 U.S. 387, 394, 105 S. Ct. 830, 835 L. Ed.2d
 821 (1985) SEE OSBORNE 624
 DEFENDANTS APPOINTED COUNSEL, THE PUBLIC DEFENDER HAS
 FAILED TO LIVE UP TO THIS STANDARD
(K) FORTY-FIVE YEARS AGO IN VAN MOLTKE vs GILLIES, 332 U.S. 708,
 725-26 68 S. Ct. 316, 324, 92 L. Ed. 309 (1948), JUSTICE
 BLACK ARTICULATED THE SIXTH AMENDMENT RIGHT TO COUNSEL AS
 FOLLOW:
 "THE RIGHT TO COUNSEL GUARANTEED BY THE CONSTITUTION CONTEMPLATES
 THE SERVICES OF AN ATTORNEY DEVOTED SOLELY TO THE
 INTERESTS OF HIS CLIENT... UNDIVIDED ALLEGIANCE AND FAITHFUL,
 DEVOTED SERVICE TO A CLIENT ARE PRIZED TRADITIONS OF THE
 AMERICAN LAWYER. IT IS THIS KIND OF SERVICE FOR WHICH THE
 SIXTH AMENDMENT MAKES PROVISION. AND NOWHERE IS THIS SERVICE
*878
 DEEMED MORE HONOEABLE THAN IN CASES OF APPOINTMENT TO REPRESENT
 AN ACCUSED TOO POOR TO HIRE A LAWYER, EVEN THOUGH THE ACCUSED MAY
 BE A MEMBER OF AN UNPOPULAR OR HATED GROUP, OR MAY BE CHARGED WITH
 AN OFFENSE WHICH IS PECULARLY ABHORRENT." SEE OSBORNE 624-25
 THE PUBLIC DEFENDER CANNOT PROVIDE ADAQUENT DEFENSE DUE TO CASE
 OVERLOAD, CONFLICT OF INTREST, COMPRIMISE OF ETHICS, AND ABANDONMENT
 OF LOALITY TO DEFENDANT.
 (6) DEFENDANT SUBMITS THAT THE FOREGOING SECTIONS, A THROUGH K,
 CLEARLY SHOW THAT THE PUBLIC DEFENDERS OFFICE IS INEFFECTIVE
 ASSISTANCE OF COUNSEL, AND THEREFORE, A VIOLATION OF DEFENDANTS
 SIXTH AMENDMANT RIGHTS.
 CONCLUSION 
 WHEREFORE, DEFENDANT PRO SE, RESPECTFULLY REQUEST THAT THIS COURT
 GRANT THIS MOTION, AND APPIONT COUNSEL OTHER THAN PUBLIC DEFENDER.
 RESPECTFULLY SUBMITTED
 
 DEFENDANT AFFIANT PRO SE
 NOTICE AFFIDAVIT AND PROOF OF SERVICE 
 I, HEREBY CERTIFY THAT A TRUE COPY OF THE FOREGOING HAS BEEN FURNISHED
 TO THE OFFICE OF THE CLERK OF THE CIRCUIT COURT OF HILLSBOROUGH
 COUNTY FLORIDA, H, C, C,. P,O, BOX 210TAMPA FL., 33610
 SUBSCRIBED AND SWORN TO BEFORE ME THIS DAY OF 1993.
 _______________________
 NOTARY PUBLIC
 MY COMMISSION EXPIRES:
 ______________________________
NOTES
[1] The Supreme Court's reference in McKaskle to a defendant's compliance with "rules of procedure and courtroom protocol" seems not to fit the resolution of the central question in McKaskle, i.e., whether the defendant's Sixth Amendment right was offended by his standby counsel's "uninvited comments." Indeed, the Supreme Court's focus in McKaskle centered on the question, which it answered in the negative, whether the defendant's status as one representing himself was undermined by the assisting attorney's involvement.
[2] Savage suffered a severe speech impediment rendering him unable to articulate his own defense.
[3] The majority opinion only refers to one motion and one hearing. This portion of the concurring opinion will, accordingly, only refer to that motion and that hearing and not the several other motions that are reflected in the record. They will be discussed later.