ALTENBERND, Judge.
Emilio Lombardo Ippolito and Susan L. Mokdad appeal their convictions and sentences for two misdemeanors. We affirm these orders. Ms. Mokdad also appeals her conviction for direct criminal contempt. Because we conclude that her isolated comment was not objectively an imminent threat to the administration of justice, we reverse this conviction.
On September 14, 1992, Judge Thomas Stringer conducted a postjudgment criminal contempt hearing in a dissolution of marriage proceeding. The former wife had allegedly violated certain child visitation requirements. The hearing was a public hearing. Mr. Ip-polito and his daughter, Ms. Mokdad, who are not related to the parties in the dissolution proceeding, attended the hearing with a group of citizens.
At some point during the hearing, Judge Stringer advised the former wife that she was not free to leave and would be held in contempt and taken into custody if she attempted to leave the hearing. A bailiff heard Mr. Ippolito encourage her to leave. As she got up to leave, Mr. Ippolito, Ms. Mokdad, and the other members of the group surrounded her and moved into the hallway. When the bailiffs attempted to take the former wife into custody, a physical disturbance erupted.
Mr. Ippolito and Ms. Mokdad are involved with a loosely organized group of people sometimes described as “constitutional counselors” or the “constitutional court.” Their difficulties in this case, in large part, arise from their unusual and incorrect reading of the United States Constitution. When reading the Constitution, they emphasize the powers retained by the people under the Ninth Amendment without recognizing that the Tenth Amendment reserved to the states the power to establish state court systems and to regulate persons engaged in the practice of law. Thus, they have little respect for the courts created by Article V of the Florida *382 Constitution and apparently believe that “the people” have some retained power to override or ignore the authority of such courts. “The people” in this context appears to be any small group whose members agree on a particular view of justice in a given case. This interpretation of the Ninth Amendment, if correct, would give support to the type of vigilantism and “lyneh-mob justice” that any democracy must abhor. As a result, the state did not regard this incident as merely an emotional outburst at a domestic relations hearing.
The state filed an information charging Mr. Ippolito and Ms. Mokdad with battery on a law enforcement officer, obstructing an officer without violence, and disorderly conduct.[1] The state charged Mr. Ippolito with an additional count of battery on a law enforcement officer concerning a second bailiff. Mr. Ip-polito and Ms. Mokdad were tried together. They represented themselves at their jury trial. The jury found Mr. Ippolito guilty of obstructing an officer without violence and disorderly conduct. The jury did not reach a verdict on one count of battery on a law enforcement officer, and found him not guilty on the second count of battery. The jury found Ms. Mokdad guilty of obstructing an officer without violence and disorderly conduct, and not guilty of battery on a law enforcement officer. The trial court adjudicated each defendant guilty of the two misdemeanors and sentenced each defendant to two concurrent terms of six months’ incarceration in the county jail.
We have reviewed the numerous issues raised by the defendants concerning these convictions and sentences and conclude that their arguments are without merit. Accordingly, we affirm their convictions and sentences.
The trial court also convicted Ms. Mokdad of direct criminal contempt for a statement made during her pro se motion for judgment of acquittal. Although we recognize that the conduct of these defendants throughout this trial would have tried the patience of the most tolerant judge, we reluctantly conclude that the isolated statement made by Ms. Mokdad in the course of self-representation did not constitute direct criminal contempt.
At the close of the state’s case on Tuesday, August 3, 1993, Ms. Mokdad made an oral motion for judgment of acquittal. Outside the presence of the jury, she vigorously argued that the charges were the result of a state conspiracy against her, that witnesses had committed perjury, and that the Constitution demanded her acquittal. She concluded her argument with the statement:
And, Your Honor, with all due respect, I have to say you are a disgrace and this Court is a disgrace for what is appearing here today. And I demand that this case be dismissed with prejudice.
At that time, the trial court simply denied the motion and proceeded with the trial. The defendants called four witnesses, whose testimony consumed the remainder of the day. The following morning, the state and the defendants gave their closing arguments. After the trial court gave its instructions, the jury retired to deliberate. The trial court then invoked Florida Rule of Criminal Procedure 3.830 and announced its intent to charge Ms. Mokdad with direct criminal contempt exclusively for making the above-quoted statement on the previous day. The trial judge notified Ms. Mokdad that he would give her the right to present evidence or mitigating circumstances after the jury returned its verdict.
After the jury returned its verdict and the defendants had been sentenced, the trial court gave Ms. Mokdad an opportunity to be heard on the issue of direct criminal contempt.[2] -She presented no evidence, but ex *383 plained that she was very emotional about this trial and that she wished to apologize to the court.
The trial court adjudicated Ms. Mokdad guilty of contempt and sentenced her to a one-year term of probation, consecutive to the jail sentence. The trial court’s written order, required by rule 3.830, recites that the only factual basis for the conviction is Ms. Mokdad’s referring to the court as a “disgrace” during her argument.
If Ms. Mokdad were an attorney, licensed and regulated by the supreme court, we would agree that her argument warranted some type of sanction. See Tarrant v. State, 537 So.2d 150 (Fla. 2d DCA), review denied, 544 So.2d 201 (Fla.1989); Mann v. State, 476 So.2d 1369 (Fla. 2d DCA 1985); but see Holt v. Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965) (reversing attorney’s conviction for contempt arising from motion charging judge with bias). But Ms. Mokdad is not an attorney. See, e.g., Thompson v. State, 618 So.2d 781 (Fla. 5th DCA 1993) (pro se defendant’s remarks during rebuttal were not objectively sufficient to justify adjudication of contempt). She is a criminal defendant, untrained in the law, who has invoked her constitutional right to self-representation. See Bowen v. State, 677 So.2d 863 (Fla. 2d DCA 1996).
Ms. Mokdad’s conduct is comparable to that of the defendant in In re Little, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972). After the denial of a motion for continuance because his attorney was unavailable, Mr. Little was required to represent himself. In summation, he claimed that the trial court was biased against him, and had prejudged the case. He maintained that the court was holding him as a political prisoner.[3] The trial court found him in criminal contempt for this disrespectful argument. In reversing, the Supreme Court reminded the bench that:
“[T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men [sic] of fortitude, able to thrive in a hardy climate.” Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546, 1552 (1947). “Trial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.” Brown v. United States, 356 U.S. 148, 153, 78 S.Ct. 622, 626, 2 L.Ed.2d 589, 595, 72 ALR2d 818 (1958).
Id., 404 U.S. at 555, 92 S.Ct. at 660, 30 L.Ed.2d at 711.
Self-representation is not a permit to disrupt the courtroom or disobey court orders, but it is inevitable that criminal defendants who invoke their Faretta[4] rights will present their cases with more emotion and less finesse than a licensed attorney. We observe that, similar to Mr. Little’s argument, Ms. Mokdad’s argument did not contain profanity, threats of violence, or sarcasm. Her brief argument did not interrupt or delay court proceedings or impact upon the jury. Her argument did not violate any standing court order, and she was never instructed to stop the argument. At the time of the comment, the trial court did not find it necessary to take any action to maintain its control and authority. Thus, Ms. Mokdad has been convicted of direct criminal contempt for forcefully stating her incorrect and ill-conceived personal opinion in the course of self-representation. In this context, we must weigh the court’s inherent power of criminal contempt against Ms. Mokdad’s First and Sixth Amendment rights. With our sympathies to the trial judge, we conclude that Ms. Mokdad cannot be punished for criminal contempt on the basis of this single, isolated statement made while representing herself in court.
To be an act of contempt, such an isolated remark “must constitute an imminent, not merely a likely, threat to the administration of justice.” Eaton v. City of Tulsa, 415 U.S. 697, 94 S.Ct. 1228, 39 *384 L.Ed.2d 693 (1974); United States v. Lumumba, 794 F.2d 806 (2d Cir.1986). This disrespectful remark must be judged objectively and not subjectively by the presiding judge. Murrell v. State, 595 So.2d 1049 (Fla. 4th DCA 1992). Even if we examine the disrespectful remark in the context of Ms. Mokdad’s entire motion for judgment of acquittal, we cannot objectively conclude that the comment was calculated to hinder or obstruct the court in the administration of justice. Ms. Mokdad should be embarrassed by her lack of decorum, but this single, overexuberant remark is not objectively sufficient to embarrass a court in the administration of justice. Moreover, we are unwilling to treat such an ill-conceived, personal opinion by a layperson as the type of statement calculated to lessen the authority or dignity of a court established under Article V of the Florida Constitution.
Affirmed in part; reversed in part.
QUINCE, J., concurs.
FRANK, A.C.J.; dissents with opinion.

. In March and May 1993, the Chief Judge of the Thirteenth Judicial Circuit also entered orders enjoining Mr. Ippolito and Ms. Mokdad from certain litigation activities and regulating their access to the Hillsborough County Courthouse.

. We note Ms. Mokdad has not argued on appeal whether it was proper for the trial court to wait until the jury was deliberating to provide her with the notice of the court’s intent to charge her with contempt for this single incident. Likewise, she does not appeal the trial court’s decision to use summary proceedings immediately following her sentencing. See Wolfe v. Coleman, 681 F.2d 1302 (11th Cir.1982) (Florida state court judge *383 cannot impose summaiy punishment without ongoing court proceeding).

. The precise language of the argument is not quoted in the opinion.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).