698 So.2d 248 (1997)
STATE of Florida, Petitioner,
v.
Jimmy Dell BOWEN, Respondent.
Jimmy Dell BOWEN, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 88219, 88748.
Supreme Court of Florida.
April 24, 1997.
Rehearing Denied August 18, 1997.
*249 Robert A. Butterworth, Attorney General; Robert J. Krauss, Sr. Assistant Attorney General, Chief of Criminal Law, and Angela D. McCravy, Assistant Attorney General, Tampa, Florida, for Petitioner/Respsondent.
Jimmy Dell Bowen, Bushnell, pro se.
SHAW, Justice.
We have for review Bowen v. State, 677 So.2d 863 (Fla. 2d DCA 1996), wherein the court certified:
Once a trial court has determined that a defendant has knowingly and intelligently waived his or her right to counsel, may that court nonetheless require the defendant to be represented by counsel because of concern that the defendant might be deprived of a fair trial if tried without such representation?
Id. at 867. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the negative and approve Bowen as explained below.
Following a dispute outside a bar, February 6, 1993, Bowen fired three shots, killing Floyd Hall and wounding Mickey Lemons. Bowen was arrested and indicted for firstdegree murder, attempted first-degree murder, and carrying a concealed weapon. Prior to trial, he claimed irreconcilable conflict with his public defender and filed a motion to allow his lawyer to withdraw. At the hearing on the motion, Bowen announced that he wanted to represent himself, and the court, after conducting an inquiry pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), concluded: "I don't think he's competent, based on his high school diploma, to represent himself in a case of this nature."
Bowen proceeded to trial with his public defender and was convicted of second-degree murder with a firearm, attempted first-degree murder, and carrying a concealed weapon. The district court, sitting en banc, reversed:
The trial court properly undertook its Faretta function but it improperly denied Bowen self-representation because of its belief that he was not competent to provide his own defense. Notwithstanding that the *250 trial court did not express a basis for its determination that Bowen was not "competent" to fulfill self-representation, there is no doubt that it focused exclusively upon whether Bowen could provide himself with a substantively qualitative defensea fair trial.
Bowen, 677 So.2d at 864.
The State argues that only a defendant who is intellectually capable of mounting an effective defense should be allowed to exercise the right of self-representation. The State contends that Florida can provide more protection than the United States Constitution for a defendant's right to a fair trial and by requiring a minimum level of legal capability this Court will also be safeguarding the State's right to an efficient and unimpeded trial.
The United States Supreme Court in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), explained that the Sixth Amendment grants to each criminal defendant the right of self-representation, regardless of consequences:
It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."
Faretta, 422 U.S. at 834, 95 S.Ct. at 2540-41 (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (Brennan, J., concurring)).
Because the consequences are serious, courts must ensure that the accused is competent to make the choice and that selfrepresentation is undertaken "with eyes open":
When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."
Id. at 835, 95 S.Ct. at 2541 (citations omitted) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).
The federal Court in Faretta made no provision for an additional layer of protection requiring courts to ascertain whether the defendant is intellectually capable of conducting an effective defense. Such a requirement would be difficult to apply and would constitute a substantial intrusion on the right of self-representation. We note that before denying Faretta's bid for self-representation the trial court asked him a number of questions, including the following:
THE COURT: Let's see how you have been doing on your research.
How many exceptions are there to the hearsay rule?
THE DEFENDANT: Well, the hearsay rule would, I guess, be called the best evidence rule, your Honor. And there are several exceptions in case law, but in actual statutory law, I don't feel there is none.
THE COURT: What are the challenges to the jury for cause?

*251 THE DEFENDANT: Well, there is twelve peremptory challenges.
Id. at 808 n. 3, 95 S.Ct. at 2528 n. 3. In spite of these and other dubious responses, the federal Court's position was firm:
We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.
Id. at 836, 95 S.Ct. at 2541 (footnote omitted).
The Florida Supreme Court recently reaffirmed this view in Hill v. State, 688 So.2d 901 (Fla.1996):
We emphasize that a defendant does not need to possess the technical legal knowledge of an attorney before being permitted to proceed pro se. As the [United States] Supreme Court stated in Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993), "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right,not the competence to represent himself."
Id. at 905 (emphasis added and omitted).
Based on the foregoing, we hold that once a court determines that a competent defendant of his or her own free will has "knowingly and intelligently" waived the right to counsel, the dictates of Farettaare satisfied, the inquiry is over, and the defendant may proceed unrepresented. See Fla. R.Crim. P. 3.111.[1] The court may not inquire further into whether the defendant "could provide himself with a substantively qualitative defense," Bowen, 677 So.2d at 864, for it is within the defendant's rights, if he or she so chooses, to sit mute and mount no defense at all.
In the present case, we agree with the district court that the dictates of Faretta were satisfied. The trial court's inquiry comprises nearly fifteen pages of transcript wherein Bowen stated unequivocally that he wanted to proceed unrepresented: "Is it your desire to proceed without a lawyer?" "Yes." Bowen attested to having "a high school education and approximately two years reading of the law." He explained that he has done legal research and, "I run a law library in the Florida State Prison for two years." He knew the maximum penalty for the present offenses.
Bowen further explained that he had represented himself in two proceedings, one of which involved a DUI charge in Florida and the other a felony charge in Illinois. He queried and selected jurors, and called and questioned witnesses. He won the DUI case, but "went to state prison" on the other. When the present trial judge responded, "So you obviously lost," Bowen retorted (referring to his present public defender), "Is Mr. Lopez a guaranteed winner?"
The record conclusively shows that Bowen "was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. "In forcing [Bowen], under these circumstances, to accept against his will a state-appointed public defender, the [trial court] deprived him of his constitutional right to conduct his own defense." Id. at 836, 95 S.Ct. at 2541. We answer the certified question in the negative and approve the decision in Bowen as explained herein.[2]
*252 Where a competent defendant "knowingly and intelligently" waives the right to counsel and proceeds unrepresented "with eyes open," he or she ipso facto receives a "fair trial" for right to counsel purposes. As for Mr. Bowen, no citizen can be denied the right of self-representationor any other constitutional rightbecause he or she has only a high school diploma.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
WELLS, J., concurs with an opinion.
KOGAN, C.J., and ANSTEAD, J., concur in result only.
WELLS, Justice, concurring.
I concur. The majority is clearly correct in holding that Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), requires answering the certified question in the negative and approving the district court's decision.
I write because the thoughtful majority and dissenting opinions of the en banc district court illustrate the difficulty which the courts frequently face in applying our Rule of Criminal Procedure 3.111(d)(3) in cases involving indigent criminal defendants who state dissatisfaction with appointed counsel. These cases present an interplay between Faretta, Hardwick v. State, 521 So.2d 1071 (Fla.1988), and Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). I am concerned because rule 3.111(d)(3) may not follow these cases with sufficient clarity and may in fact lead to confused application. I believe that the Criminal Procedure Rules Committee of The Florida Bar should immediately review the rule, particularly regarding its references to mental condition, age, education, and experience as factors in determining whether to accept a waiver of assistance of counsel. The committee should consider the rule in light of our decision and the district court decision in the instant case, as well as our decision in Hill v. State, 656 So.2d 1271 (Fla.1995), in which we emphasized that a defendant does not need the technical legal knowledge of an attorney before being permitted to proceed pro se.
I also believe that the Florida Conference of Circuit Judges should develop a colloquy for trial judges to use when questioning defendants who wish to waive the assistance of counsel.
NOTES
[1] Florida Rule of Criminal Procedure 3.111 provides in relevant part:

(d) Waiver of Counsel.
....
(2) A defendant shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make an intelligent and understanding waiver.
(3) No waiver shall be accepted if it appears that the defendant is unable to make an intelligent and understanding choice because of a mental condition, age, education, experience, the nature or complexity of the case, or other factors.
[2] The other issue raised by Bowen (i.e., that because the middle initial of a victim's name on the indictment was wrong, Bowen is entitled to discharge) is without merit.