IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SYLVESTER HOOKS,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NOS. 1D16-0368, 1D16-0369 &
1D16-0370

Opinion filed December 6, 2017.

An appeal from the Circuit Court for Leon County.
Terry P. Lewis, Judge.

Andy Thomas, Public Defender, Kasey Lacey, Assistant Public Defender, Steven Seliger, Assistant Public Defender, and Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Jason Rodriguez, Assistant Attorney General, and Jennifer J. Moore, Assistant Attorney General, Tallahassee, for Appellee.

WINOKUR, J.

Sylvester Hooks appeals his conviction and his judgment and sentence upon violation of probation, raising two issues: whether the trial court erred by conducting an inadequate *Faretta*[1] inquiry, and whether the trial court erred by denying Hooks'

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

motion to suppress evidence. We affirm, but write to address Hooks' claim that the trial court's *Faretta* inquiry was insufficient.

I.

Prior to trial on two counts[2] and on violation of probation, Hooks informed the trial court that he wished to represent himself. The trial court had Hooks read, initial, and sign a form entitled "Self-Representation Advisory Form/Trial" ("the form"). The trial court then asked if Hooks read over the form carefully. Hooks answered in the affirmative. The trial court then proceeded to reiterate the disadvantages of self-representation and that Hooks had to make a voluntary and knowing decision to do so. The trial court then asked if Hooks still wanted to waive his right to counsel. Hooks again answered in the affirmative. The trial court then discharged Hooks' counsel, but allowed her to remain as standby counsel.

Immediately before trial commenced, the trial court once again asked Hooks if he still wanted to represent himself. After speaking to his standby counsel, Hooks replied affirmatively. Hooks then represented himself throughout the trial and probation violation proceedings. The jury found Hooks guilty as charged. The trial court sentenced Hooks accordingly, and found Hooks guilty of violating probation, revoked probation, and sentenced him on those charges as well.

---

[2] Possession of Pyrrolidinovalerophenone with intent to sell within 1,000 feet of a community center, and possession of cannabis with intent to sell within 1,000 feet of a community center.

## II.

Hooks never objected to the sufficiency of the *Faretta* inquiry at trial. However, a deficient *Faretta* inquiry constitutes fundamental error that can be raised for the first time on appeal. *See Curtis v. State*, 32 So. 3d 759, 761 (Fla. 2d DCA 2010).

## A.

"Under the United States Supreme Court's ruling in *Faretta*, an accused has the right to self-representation at trial." *Tennis v. State*, 997 So. 2d 375, 377 (Fla. 2008). "A defendant's choice to invoke this right 'must be honored out of that respect for the individual which is the lifeblood of the law.'" *Id.* at 377-78 (quoting *Faretta*, 422 U.S. at 834). A defendant "must be free personally to decide whether in his particular case counsel is to his advantage." *Faretta*, 422 U.S. at 834. As such, "the Sixth and Fourteenth Amendments include a 'constitutional right to proceed *without* counsel when' a criminal defendant 'voluntarily and intelligently elects to do so.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (quoting *Faretta*, 422 U.S. at 807). A defendant who expresses a desire to self-represent must "knowingly and intelligently" do so, and the trial court should make the defendant "aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. The Court's purpose in requiring such an inquiry is to ensure that a defendant who

3

chooses self-representation does so "with eyes open." *Id*. (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1943)).

Central to the *Faretta* Court's rationale is the view that forced representation is constitutionally proscribed. Indeed, the Court viewed the issue through that lens from the outset.[3] Accordingly, the Court found that "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Id*. at 835.

The United States Supreme Court revisited *Faretta* in *Godinez v. Moran*. 509 U.S. 389 (1993). The Court held that the competency standard for pleading guilty or waiving the right to counsel was not higher than the standard for competency to stand trial. *Id*. at 391. Specifically, the Court held that whether defendants may be permitted to represent themselves is a "two-part inquiry:" first, the trial court establishes that a defendant is competent; and second, the trial court determines that a waiver of counsel is "knowing and voluntary." *Id*. at 401. "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." *Id.* at 401 n.12. "The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant

---

[3] *See id*. at 807 (Succinctly stating that the issue before the Court "is whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense. It is not an easy question, but we have concluded that a State may not constitutionally do so.").

actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* However, the trial court need not make an explicit determination of competency before a defendant may exercise the right to self-representation. *See id.* at 401 n.13 (holding that a court is not "required to make a competency determination in every case in which the defendant seeks to . . . waive his right to counsel;" "[A] competency determination is necessary only when a court has reason to doubt the defendant's competence." (*citing Drope v. Missouri*, 420 U.S. 162, 180-81 (1975); *Pate v. Robinson*, 383 U.S. 375, 385 (1966))).

B.

A review of the history of Florida Rule of Criminal Procedure 3.111(d) is helpful in understanding Florida courts' application of *Faretta*. In 1972, the Florida Supreme Court adopted Florida Rule of Criminal Procedure 3.111, entitled "Providing Counsel to Indigents," which established procedures for appointment of counsel to indigent defendants. *In re Florida Rules of Criminal Procedure*, 272 So. 2d 65 (Fla. 1972). The rule addressed a defendant's waiver of appointed counsel as follows:

> No waiver shall be accepted where it appears that the defendant is unable to make an intelligent and understanding choice because of his mental condition, age, education, experience, the nature or complexity of the case, or other factors.

5

Fla. R. Crim. P. 3.111(d)(3) (1973). Two years after this rule became effective, the United States Supreme Court decided *Faretta*, which, as stated, recognized that a defendant has the right to self-representation. But based on Rule 3.111(d), Florida courts held that a trial court must make specific inquiry on the record relating to the defendant's age, ability to read and write, education, and other factors, before a waiver of counsel was deemed sufficient. *See e.g. Wilson v. State*, 724 So. 2d 144, 145 (Fla. 1st DCA 1998); *Gillyard v. State*, 704 So. 2d 165 (Fla. 2d DCA 1997); *Smith v. State*, 512 So. 2d 291 (Fla. 1st DCA 1987). By mandating these specific questions, these cases suggested that a court had an obligation to deny a request for self-representation unless the defendant was sufficiently aged, educated, and literate, to handle self-representation, seemingly in conflict with *Faretta.*

The Florida Supreme Court addressed the tension between the waiver of counsel provision of Rule 3.111(d) and *Faretta* in *State v. Bowen*, 698 So. 2d 248 (Fla. 1997). In *Bowen*, the trial court refused to accept the defendant's waiver of counsel based upon the factors enumerated in Rule 3.111(d)(3), in particular that the defendant's education was insufficient to represent himself in a complex case. *Bowen*, 698 So. 2d at 250-51. The supreme court reversed, holding that "once a court determines that a competent defendant of his or her own free will has 'knowingly and intelligently' waived the right to counsel, the dictates of *Faretta* are satisfied, the inquiry is over, and the defendant may proceed unrepresented." *Id.* at 251. "[N]o

6

citizen can be denied the right of self-representation—or any other constitutional right—because he or she has only a high school diploma." *Id.* at 252. In concurrence, Justice Wells expressed concern that Rule 3.111(d)(3) was inconsistent with the court's ruling in *Bowen* and other decisions. *Id.* (Wells, J., concurring).

In light of *Bowen*, the Florida Supreme Court amended the rule, removing the requirement that a court refuse to permit a waiver of counsel based upon the defendant's mental condition, age, education, experience, the nature or complexity of the case, or other factor, and replaced it with the following:

> Regardless of the defendant's legal skills or the complexity of the case, the court shall not deny a defendant's unequivocal request to represent him or herself, if the court makes a determination of record that the defendant has made a knowing and intelligent waiver of the right to counsel.

Fla. R. Crim. P. 3.111(d)(3) (1998); *Amendment to Florida Rule of Criminal Procedure 3.111(d)(2)-(3)*, 719 So. 2d 873 (Fla. 1998). Thus, Rule 3.111(d) reflects the understanding that *Faretta* does not require certain "magic words" to effectuate self-representation. *Potts v. State*, 718 So. 2d 757, 760 (Fla. 1998). The amended rule also added a provision to subsection (2) of Rule 3.111(d) requiring the court to "advise the defendant of the disadvantages and dangers of self-representation" before determining whether a waiver of counsel is knowing and intelligent.[4]

---

[4] In 2009, the Florida Supreme Court added the following clause to the end of the sentence in Rule 3.111(d)(3): "and does not suffer from severe mental illness to

7

In short, a competent defendant who does not suffer from severe mental illness and who has been advised of the disadvantages and dangers of self-representation cannot be denied the right to self-representation, regardless of age, education, experience, or the nature or complexity of the case. While these factors may be relevant in determining competence, failure to inquire specifically into any of the factors does not automatically render a *Faretta* inquiry deficient. We ruled in *Edenfield v. State*, 45 So. 3d 26 (Fla. 1st DCA 2010), that any case imposing such a requirement was applying the pre-1998 version of Rule 3.111(d):

> The current version of Rule 3.111(d) does not require questions regarding any of the information emphasized by Edenfield. Some cases indicate a mechanical, rote process must be followed, requiring specific questions about the defendant's age, education, mental condition, and experience with criminal proceedings. However, these holdings are based on a prior version of Rule 3.111(d)(3). This prior version stated a waiver was unacceptable unless the trial court found on the record that the defendant had made a competent choice based on his "mental condition, age, education, experience, the nature or complexity of the case, or other factors." This language was removed from the Rule in 1998, following *Bowen*'s holding that the inquiry needs to ensure only that the defendant is proceeding "with eyes open." 698 So. 2d at 251. Regardless, asking such questions can often be a redundant exercise. Much of the information covered by

the point where the defendant is not competent to conduct trial proceedings by himself or herself." *In re Amendments to Florida Rule of Criminal Procedure 3.111*, 17 So. 3d 272, 275 (Fla. 2009). This addition followed the United States Supreme Court decision in *Indiana v. Edwards*, which held that a person suffering from severe mental illness, even if competent to stand trial, may be denied self-representation. 554 U.S. 164 (2008).

8

> the questions is already provided to the court by other means. For example, in the instant case, the County Court had access to Edenfield's probable cause affidavit and DUI citation.

*Edenfield*, 45 So. 3d at 30 n.11. *See also Neal v. State*, 60 So. 3d 1132, 1135 (Fla. 4th DCA 2011) (noting that "[a]lthough a prior version of the rule required the court to find on the record that the defendant had made a competent choice of self-representation based on his 'mental condition, age, education, experience, the nature or complexity of the case, or other factors,' that express requirement was eliminated in the current version of the rule"). As we did in *Edenfield*, we emphasize again that no "magic words" or specific questions are necessary to ensure an adequate *Faretta* inquiry. 45 So. 3d at 30. If the trial court has adequately determined that the defendant is competent to waive counsel, and is satisfied that the defendant understands its advice regarding the dangers and disadvantages of self-representation, then not only does the court not err in permitting self-representation, but is required to do so.

## III.

The form given to Hooks informed him of his right to counsel and explained, in detail, the advantages and disadvantages of self-representation. Hooks had to initial every numbered statement on the form and sign his name at the bottom of the form. The form is exhaustive and states as follows:

1. If I cannot afford a lawyer, the state will appoint me one and pay for it.

2. If I can afford a lawyer, I can hire a lawyer of my choice.

3. Before trial, a lawyer's legal training and experience may:

> A. Help me get or change bail.
> B. Get information about my case by enforcing the legal rules for discovery.
> C. Uncover violations of my constitutional rights and enforce them.
> D. Make sure I have a speedy trial if I want one.
> E. Make sure the state has followed the statute of limitations.
> F. Identify and preserve favorable evidence for my trial.
> G. Help me get the best possible plea and sentence, if I don't want a trial.
> H. Uncover legal grounds to dismiss my case or suppress evidence against me.
> I. File the proper papers to preserve my right to present defenses at trial, including presenting an alibi.

4. At trial, a lawyer's legal training and experience may:

> A. Help me pick the best jury, and explain to me challenges for cause, peremptory challenges, and the number of challenges allowed.
> B. Make sure the state follows the proper rules for picking a jury.
> C. Call my witnesses and make sure they were served subpoenas for trial.
> D. Question the witnesses against me.
> E. Present documents and physical evidence to help me.
> F. Advise me on whether I should testify at trial, and the consequences of that decision.
> G. Object and argue to the judge if the state does not follow rules of evidence.
> H. Make effective closing arguments to the jury.
> I. Preserve objections for appeal if I lose the trial.
> J. Prevent improper arguments by the state to the jury.

5. Self-representation is almost always unwise because:

    A. I will not get any special treatment.
    B. I will not get a continuance just because I represent myself.
    C. If I am in jail, I have limited legal resources for trial research. It may be hard or impossible for me to subpoena my witnesses or my evidence for trial. It will be hard or impossible for me to talk with the state, other witnesses, or other persons on matters that may help my defense.
    D. I will have to follow the rules of criminal procedure and evidence, even though it takes years for a lawyer to learn these laws and rules.
    E. A defendant often gets too emotional during the trial and cannot concentrate, be objective, or be effective in defending the case.
    F. Questioning a witness about what you did or did not do can be awkward and ineffective in the eyes of the jury.
    G. A defendant cannot appeal and claim that lack of legal skills is a ground for a new trial.

6. The decision to represent myself may be final. The judge might not appoint me a lawyer later for trial just because I decide I made a poor decision to represent myself.

7. If I represent myself at trial, and if I am convicted, I will have the right to an appointed lawyer for sentencing. Sentencing is a separate proceeding.

    I swear I have read and understood the above form.

After Hooks read and signed the form, the trial court addressed Hooks regarding his understanding of his rights, his competence to waive them, and his understanding of the form:

    THE COURT: [L]et me have Mr. Hooks and Ms. Helms come up here real close to the court reporter so we can see about Mr. Hooks' decision to represent himself.

Early in the morning, Mr. Hooks, your attorney said you had decided to represent yourself. And I handed to you what I call a little form for self-representation which goes over all the things that say I want you to make sure you know about so I don't have to repeat a lot of it. Did you get a chance to read over that real carefully?

[HOOKS]: Yes, sir.

THE COURT: Okay. And, and I'll say, again, it's your absolute right to represent yourself if you want to. I almost never advise it, because a lawyer - - it says on that form - - has got a lot of knowledge and experience, knowledge about procedures, knowledge about rules of evidence, things that you might not know about. You don't have to be a lawyer to represent yourself. You just have to know the disadvantages and to make a voluntary and knowing decision to do it.

Have you thought about it and decided whether you, still wanted to represent yourself?

[HOOKS]: Yes, I have. And I do want to represent myself.

THE COURT: And you do want to represent yourself. Okay. Well, let me have you initial those things and then sign that form for me. And I'll have that in the file. And I'll sign it and we'll - -

[DEFENSE COUNSEL]: Judge, he's already initialed - -

THE COURT: Yes.

[DEFENSE COUNSEL]: - - each spot. I can approach with that.

THE COURT: Okay. Did he sign it, too?

[DEFENSE COUNSEL]: He did sign it, Judge.

THE COURT: Okay.

[DEFENSE COUNSEL]: I think the only thing we're missing is the case number.

THE COURT: I'll put in.

In summary, the trial court gave Hooks, through the self-representation form, a thoroughly detailed account of his right to counsel, the benefits of counsel, and the

dangers and disadvantages of self-representation. Hooks initialed every paragraph and signed the form, swearing that he read and understood the form. The court then reiterated on the record the dangers of self-representation, specifically asked Hooks on the record whether he read the form carefully (to which Hooks responded affirmatively), and told him that his decision to represent himself must be voluntary. We see nothing in the record that would have given the court "reason to doubt the defendant's competence," *Godinez*, 509 U.S. at 401 n.13, and Hooks has suggested none. We conclude that the trial court adequately advised him of the dangers of self-representation and determined that he intelligently and knowingly waived his right to counsel.

IV.

A.

Hooks argues that the inquiry was inadequate because the court failed to ask questions about his age, education, mental or physical health, ability to read and write, drug use, or prior self-representation. Again, the failure to ask any specific questions does not render a *Faretta* inquiry inadequate. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (stating there is no formula or script to a *Faretta* inquiry and the waiver need only be made with "eyes open"); *Edenfield*, 45 So. 3d at 30 (noting that "since there are no 'magic words' required in a *Faretta* inquiry, there is no requirement that any specific questions be asked"). A requirement that trial courts ask certain

questions of the defendant verbatim is contrary to the Florida Supreme Court's recognition that "self-representation is best safeguarded not by an arcane maze of magic words and reversible error traps, but by reason and common sense." *Potts*, 718 So. 2d at 760. Moreover, these sorts of requirements may very well frustrate the purpose and intent of *Faretta* itself.

Hooks represented that he was literate, as he affirmed twice, once in writing and once on the record, and that he read and understood the form explaining the dangers and disadvantages of self-representation. Hooks argues that the court asked no questions from which it could determine that he was competent to waive counsel, but the colloquy here is similar to the colloquy in *Edenfield*. A specific inquiry into Hooks' age and education was not necessary because his actions and answers to the trial court's colloquy indicated that he understood the disadvantages of self-representation and that he made the choice "with eyes open." *Faretta*, 422 U.S. at 835. *See Potts*, 718 So. 2d at 759 (noting that a decision regarding a sufficient *Faretta* inquiry "turns primarily on [the trial court's] assessment of demeanor and credibility").

## B.

The State disagrees with Hooks that his *Faretta* inquiry was deficient for failing to inquire regarding his age or education level, citing *Edenfield.* However, the State concedes that Hooks' waiver was deficient because no direct inquiry was

made regarding his ability to read and whether he understood the form given to him by the trial court. The State relies on our decision in *Stanley v. State*. 192 So. 3d 1291 (Fla. 1st DCA 2016). In *Stanley*, we held that trial courts "must *consider* 'the defendant's mental condition, age, education, and any other factor bearing on his capacity to choose self-representation.'" *Id*. at 1292 (quoting *White v. State*, 21 So. 3d 77, 79 (Fla. 1st DCA 2009) (emphasis added)). However, consideration of these factors does not mean that trial courts must engage in rote recitation of certain key phrases or questions. That is precisely what the 1998 revision to Rule 3.111(d) was meant to prevent.

The record shows that Hooks read and signed the self-representation form, which included a provision that Hooks swore that he understood the form. The trial court then asked Hooks if he read over the form carefully, and Hooks answered in the affirmative. Clearly, the trial court ascertained Hooks' literacy when Hooks verified that he read the form carefully. Asking a defendant who has just stated that he has read and understood a written form "can you read?" is, at best, superfluous.

In *Faretta*, the trial court engaged in an exhaustive colloquy where the defendant was quizzed on "the intricacies of the hearsay rule and the California code provisions that govern challenges of potential juror on *voir dire*." 422 U.S. at 836. At no point did the trial court ask the defendant if he was literate. *Id*. at 808 nn. 2 & 3. Yet, the Court found that the trial court's colloquy had shown that the defendant

was "literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Id*. at 835. The touchstone of *Faretta* is a common-sense inquiry of whether a defendant is competent to knowingly and voluntarily waive the right to counsel, not a mechanical recitation of boilerplate questions.

Hooks informed the court that he read, understood, and signed a form detailing an exhaustive list of his constitutional right to counsel, as well as the pitfalls of representation and the advantages of retaining counsel. This satisfied the trial court that his age and educational level were sufficient to make a knowing and voluntary choice to waive his right to counsel. Any further probing into his age and education would serve only to ascertain whether Hooks could effectively represent himself, which is precisely the sort of inquiry that the United States Supreme Court and the Florida Supreme Court have proscribed.

### V.

Again, the Florida Supreme Court has clearly held that the adequacy of a *Faretta* inquiry is not based on the "specific advice rendered by the trial court" or "magic words" that the trial court must utter to the defendant, "but rather on the defendant's general understanding of his or her rights." *Potts*, 718 So. 2d at 760. *See also McCray v. State*, 71 So. 3d 848, 867 (Fla. 2011) (noting that "what matters is not the words the trial court employs but rather that the record reflects a defendant who makes a knowing and voluntary waiver of counsel" (internal quotations

16

omitted)); *McKenzie v. State*, 29 So. 3d 272, 281–82 (Fla. 2010) (rejecting claim that *Faretta* inquiry was insufficient for failure to inquire into the defendant's experience with the criminal justice system). However, we must address language in the supreme court's opinion in *Aguirre-Jarquin v. State*, 9 So. 3d 593 (Fla. 2009) that appears to conflict with this well-settled rule.

In assessing the adequacy of a *Faretta* inquiry, the supreme court in *Aguirre-Jarquin* wrote, "[i]n order to ensure the waiver is knowing and voluntary, the trial court must inquire as to the defendant's age, experience, and understanding of the rules of criminal procedure." *Id*. at 602. By writing that the trial court "must" make these specific inquiries, *Aguirre-Jarquin* seems to conflict with other supreme court decisions that reject an approach mandating specific questions for an adequate waiver of counsel and hold that the analysis turns on "the defendant's general understanding of his or her rights." *Potts*, 718 So. 2d at 760.

*Aguirre-Jarquin* cites *Porter v. State*, 788 So. 2d 917, 927 (Fla. 2001), for the contention that the trial court "must" ask specific questions to ensure a knowing and voluntary waiver of counsel. However, *Porter* did not in fact make this contention. *Porter* merely recounted a list of "factors to be considered" in determining whether a waiver of counsel is knowing and voluntary. *Id.* The *Porter* court drew this list from *United States v. Fant*, 890 F.2d 408 (11th Cir. 1989).[5] *Porter* did not hold, as

_____

[5] The factors set out in *Fant* were as follows:

17

*Aguirre-Jarquin* suggests, that a trial court "must" ask any particular questions to assure a valid waiver of counsel.

While it might be tempting to view the disputed language in *Aguirre-Jarquin* as an anomaly that the supreme court later rejected in cases such as *McKenzie* and *McCray*, the supreme court recently cited that provision of *Aguirre-Jarquin* in *McGirth v. State*, 209 So. 3d 1146, 1157 (Fla. 2017).

We find that the supreme court did not intend to create a new rule of law in *Aguirre-Jarquin*—invalidating self-representation unless the trial court asks particular questions of the defendant—for two reasons. First, as noted above, such a rule conflicts with a substantial body of case law from both the Florida Supreme Court and the United States Supreme Court rejecting that approach.

---

> (1) the background, experience and conduct of the defendant including his age, educational background, and his physical and mental health; (2) the extent to which the defendant had contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, the possible defenses, and the possible penalty; (4) the defendant's understanding of the rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which he aided the defendant; (7) whether the waiver of counsel was the result of mistreatment or coercion; or (8) whether the defendant was trying to manipulate the events of the trial.

*United States v. Fant,* 890 F.2d 408, 409-10 (11th Cir. 1989).

18

Second, while the *Aguirre-Jarquin* court suggested that a trial court "must" ask specific questions, it neither disapproved the *Faretta* inquiry given there because the specific questions were not asked, nor did it approve it because the specific questions <u>were</u> asked. The *Aguirre-Jarquin* court found that the *Faretta* inquiry was sufficient, but did not indicate whether the trial court asked those questions. *Aguirre-Jarquin*, 9 So. 3d at 602. As such, the alleged requirement for specific questions was *dicta* in this context.

VI.

There is competent substantial evidence in the trial record that Hooks knowingly and voluntarily waived his right to counsel and understood the disadvantages of doing so. That is what *Faretta* and Rule 3.111(d) require. Any further inquiry runs afoul of the constitutional guarantee of self-representation. However, in order to resolve the issue raised by *Aguirre-Jarquin*, we certify the following as a question of great public importance:

> IS A *FARETTA* INQUIRY INVALID IF THE COURT DOES NOT EXPLICITLY INQUIRE AS TO THE DEFENDANT'S AGE, EXPERIENCE, AND UNDERSTANDING OF THE RULES OF CRIMINAL PROCEDURE?

AFFIRMED.

ROWE and OSTERHAUS, JJ., CONCUR.