# Third District Court of Appeal
## State of Florida

Opinion filed February 24, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1170
Lower Tribunal No. 18-22714
_____

**Vedrick Lamonte Symonette,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Diane Ward, Judge.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Jacqueline Rae Brandt, Assistant Regional Counsel, for appellant.

Ashley Moody, Attorney General, and David Llanes, Assistant Attorney General, for appellee.

Before LOGUE, GORDO and BOKOR, JJ.

GORDO, J.

Vedrick Lamonte Symonette appeals his conviction and sentence, arguing the trial court abused its discretion in excluding evidence in support of his alibi defense.[1]   We have jurisdiction.   See Fla. R. App. P. 9.140(b)(1)(A).  Because Symonette failed to properly authenticate and lay the foundation required by the Florida Evidence Code for the documents he sought to introduce, we find no error in the trial court's ruling and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to trial, Symonette advised the court that he wished to waive his right to counsel and represent himself.  The court conducted an extensive Faretta[2] inquiry, granted Symonette's request to proceed to trial without further continuances and set a trial date.  A month before the trial date, Symonette filed a "Notice of Alibi," stating that he was actually innocent, was ready for trial, and would be calling no witnesses.  Twice more before trial, the trial judge offered Symonette appointed counsel and conducted Faretta

---

[1] Symonette argues that the trial court was required to hold a Richardson hearing prior to excluding his evidence.  See Richardson v. State, 246 So. 2d 771 (Fla. 1971).  The record does not support his position that the evidence was excluded as a result of a discovery violation.  The evidence he sought to introduce was inadmissible without further testimony or evidence, which he repeatedly advised the court he would not be presenting, irrespective of any discovery violation.  Thus, a Richardson hearing was unnecessary.

[2] Faretta v. California, 422 U.S. 806 (1975).

hearings, but Symonette continued to advise the court he wished to represent himself.

At trial, the court conducted yet another <u>Faretta</u> hearing, found Symonette competent, and appointed standby counsel,[3] who was present throughout the trial proceedings. The court asked Symonette about the Notice of Alibi and whether he intended to present any testimony or evidence in support of his alibi defense. Symonette advised the court that he had no witnesses or evidence to present.

During opening statement, Symonette told the jury that he had documents that would show he was living in Texas at the time of the crimes charged.[4] The trial court dismissed the jury and asked Symonette why he

---

[3] Following his appointment, Symonette's standby counsel advised the court that given his unfamiliarity with the case, he would be unable to render effective assistance if asked to step in midway through trial. He then stated everything he would do in preparation for trial, including hiring an investigator, deposing witnesses, and visiting and photographing the crime scene. He further stated that he would encourage Symonette not to represent himself and to permit him to be his attorney. After a conference with Symonette, standby counsel advised the court that despite Symonette's awareness of the benefits of having counsel, he wanted to forego those benefits for an immediate trial. Symonette then confirmed to the court that he wanted to proceed with self-representation.

[4] These documents included a purported Texas driver's license, a W-2 form, bank statements, and home security system billing records—all of which, Symonette contended, would prove he was living in Khalil, Texas, at the time of the alleged crime. Notably, even if admissible, these documents would not have demonstrated that Symonette was physically present in Texas on the date in question.

3

represented to the jury that he would be presenting evidence when he had previously, repeatedly advised the court he would not be presenting any witnesses or exhibits. The court reminded Symonette that because he chose self-representation, he was being "held to the same standard as an attorney." The court further reminded him that, as it had informed him previously, any witness list or exhibits needed to have been filed with the clerk of court and copies provided to the State. After acknowledging that he had failed to turn copies of the documents over to the State, the court asked Symonette to provide the documents to the bailiff for copying. Following a brief recess, the judge noted that she would review the documents and address their admissibility prior to Symonette's case in chief, and trial proceeded.

After the State rested its case, Symonette advised the court that he did not wish to testify. The court then asked him how he intended to introduce the records that he alleged would have demonstrated he was not in Florida in 2016. Symonette stated that he would "submit [the documents] to the Court and let the Court know that this is what [he is] saying is the truth." The court responded:

> As I told you yesterday, there were very many dangers in representing yourself and I went over it in great detail. . . . [T]hese are not admissible in evidence unless you have a legal theory as to how they're admitted. So, what we'll do is after the break, we're going to begin with closing arguments.

Following the charge conference, the State requested that the court colloquy Symonette once more about his decision not to testify. Although he initially insisted he still did not want to testify, after conferring with standby counsel, he stated he had reconsidered and would be testifying. The court then asked him whether he was planning to introduce any of the documents he brought with him because "there [was] no legal basis [under which he could] introduce [them]." Symonette stated that if he would not "be allowed to even discuss [the documents]" he would not be testifying. Ultimately, Symonette did not testify and the case proceeded to closing arguments. In closing argument, Symonette referred to the documents not in evidence several times and urged the jury to ask the court for copies of them.

## LEGAL ANALYSIS

Every American has a constitutional right to represent himself where he voluntarily and intelligently elects to do so. Personal liberties, such as the right to self-representation, "are not rooted in the law of averages." Faretta, 422 U.S. at 834. "The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage." Id. "[A] defendant does not need to possess the technical legal knowledge of an attorney before being permitted to proceed

5

pro se. . . . '[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, *not the competence to represent himself*.'" State v. Bowen, 698 So. 2d 248, 251 (Fla. 1997) (quoting Hill v. State, 688 So. 2d 901, 905 (Fla. 1996)) (internal quotation omitted).

There are, however, "dangers and disadvantages" associated with self-representation. Faretta, 422 U.S. at 835. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Id. (quoting Adams v. U.S. ex rel. McCann, 317 U.S. 269, 279 (1942)). "And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" Id. at 834 (quoting Illinois v. Allen, 397 U.S. 337, 350–51 (1970) (Brennan, J., concurring)).

"It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be

6

realized, if at all, only imperfectly."[5] Id. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." Id. at 835.

Here, Symonette repeatedly chose to waive his constitutional right to counsel and proceed with self-representation despite the trial court's statements that there were dangers involved in doing so. His court-appointed standby counsel was present at all times, seated behind him, but Symonette elected to proceed with trying the case himself. In fact, he proceeded to trial against standby counsel's advice that the case should be continued to conduct further investigation of several issues.

When a defendant voluntarily and intelligently decides to undertake his own representation, it is not the trial court's responsibility to stand in place of his attorney. See McKaskle v. Wiggins, 465 U.S. 168, 183–84 (1984). Indeed, when conducting a Faretta colloquy, the trial court may not even inquire into whether the defendant can "provide himself with a substantively qualitative defense" because the defendant can choose "to sit mute and mount no defense at all." Bowen, 698 So. 2d at 251 (citation omitted).

---

[5] It is often said, "a person who represents himself has a fool for a client." Although the origins of this adage are uncertain, it is typically attributed to President Abraham Lincoln. See, e.g., Marshall H. Tanick & Phillip J. Trobaugh, *Lincoln's Minnesota Legacy*, 66 BENCH & B. MINN., Feb. 2009, at 1, 4 (quoting Letter from Abraham Lincoln to Isham Reavis (Nov. 5, 1855)).

Once the trial court has determined that the defendant properly waived his right to counsel and the defendant is representing himself, his trial strategy is his choice, with the assistance of standby counsel, if sought. See id. "A defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure." McKaskle, 465 U.S. at 183. "Nor does the Constitution require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." Id. at 184. "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." Faretta, 422 U.S. at 834 n.46.

"Generally, a trial court's ruling on the admissibility of evidence will be upheld absent an abuse of discretion." Williams v. State, 967 So. 2d 735, 747–48 (Fla. 2007). Here, after having repeatedly advised the court he did not intend to put on a case, Symonette stated he would simply be submitting the documents to the court for the jury's consideration. It was evident that he did not have the proper witnesses to call or any evidentiary support to introduce in order to authenticate and lay the foundation for the admissibility of any of the documents he brought with him. It is well-established that without authentication and proper foundation, these documents are

8

inadmissible in evidence.  See, e.g., §§ 90.803(6), 90.803(8), 90.901, Fla. Stat. (2020); Jackson v. Household Fin. Corp. III, 298 So. 3d 531, 535 (Fla. 2020) ("A party can lay a foundation for the [admission of documents pursuant to the] business records exception in three ways: (1) offering testimony of a records custodian, (2) presenting a certification or declaration that each of the elements has been satisfied, or (3) obtaining a stipulation of admissibility." (quoting Jackson v. Household Fin. Corp. III, 236 So. 3d 1170, 1172 (Fla. 2d DCA 2018))).  We therefore find the trial court did not abuse its discretion in excluding Symonette's documents where Symonette was unable to authenticate them and lay the foundation for their admissibility under the Florida Evidence Code.

Affirmed.