# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-1163

_____

ISAAIH X. ASH,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Columbia County.
Leandra G. Johnson, Judge.

June 4, 2025

OPINION ON MOTION FOR REHEARING, REHEARING EN BANC, AND
TO CERTIFY QUESTIONS OF GREAT PUBLIC IMPORTANCE

LONG, J.

We grant the State's motion for rehearing.[1] We grant in part and deny in part the State's motion to certify questions of great public importance. We deny the State's motion for rehearing en banc. We withdraw our prior opinion and substitute the following in its place.

_____

[1] Judge Ray was substituted for an original panel member in this proceeding after the initial opinion issued.

*I.	On Motion for Rehearing*

Isaaih X. Ash appealed his judgment and sentence for attempted armed robbery. Ash's appellate counsel filed an *Anders*[2] brief indicating that he was unable to make a good faith argument for reversal. We, in turn, permitted Ash to file a pro se initial brief. We then independently reviewed the record, as required by Florida Rule of Appellate Procedure 9.140(g)(2)(A). Following our independent review, the Court sua sponte ordered the parties to brief several issues. After supplemental briefing, we issued an opinion reversing the sentence. We reversed on an issue we raised, though it was never meaningfully presented or argued by Ash. Following our initial opinion, the State moved for rehearing, arguing that in the effort to meet our *Anders* obligations we exceeded the scope of our authority, departed from our neutral role, and took on the role of advocate by raising and reversing on a claim that was not advanced by Ash. On reflection, we agree. Because we misapprehended the law, we grant the motion for rehearing. *See* Fla. R. App. P. 9.330(a)(2)(A) (permitting a motion for rehearing where the court has misapprehended the law).

We sua sponte ordered the parties to brief:

I.	Whether the trial court's efforts to protect Ash's right to court-appointed counsel impermissibly interfered with Ash's right to self-representation.

A.	Whether the sheer number of *Faretta* inquiries in this case – 14 – caused Ash to abandon his right to self-representation.

B.	Whether the trial court's questions regarding Ash's technical competence to represent himself caused Ash to abandon his right to self-representation.

C.	Whether the trial court's statements – on at least 13 separate occasions – that Ash lacked the technical

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

2

competence to represent himself caused Ash to abandon his right to self-representation.

At first glance, Ash's supplemental brief, in his "Summary of the Argument" section, appeared to advance argument on the issues we raised:

> In Point I, Defendant Ash maintains the trial court impermissibly interfered with his right to self-represent by the frequency in which it held *Faretta* inquiries; by its questions regarding Ash's technical competence to represent himself; and by its multiple statements declaring that he lacked the technical competence to self-represent. The court's *Faretta*-related actions caused Ash to abandon his right to self-represent several times in the lower court. Reversal is warranted without regard to any type of harmless error analysis.

But, when compared to our supplemental briefing order, we see that this section does no more than restate the questions we posed. *See* Fla. R. App. P. 9.210(b)(4) ("[A] summary of argument, suitably paragraphed, condensing succinctly, accurately, and clearly the argument actually made in the body of the brief, which should not be a mere repetition of the headings under which the argument is arranged."). And Ash's "Argument" section of the brief does not elaborate. In fact, in several places, the body of the brief directly contradicts these statements.

For example, in the argument section, Ash argued that "at no time was his request to self-represent ever expressly denied as a consequence of the court employing an incorrect standard of competence." Ash's supplemental brief noted that despite the multiple inquiries into his technical competence, "his every request to self-represent was granted, in accordance with *Faretta.*" And leaving no doubt as to appellate counsel's professional judgment, the brief argues that "[a]t no time was his right to self-represent effectively denied because he lacked the technical competence and legal training to defend himself." Finally, in answer to our order asking if the number of inquiries caused Ash to abandon his right to self-representation, the supplemental brief

3

says, "the record shows that he exhibited no hesitation when it came to exercising his right to self-representation."

Ash, at most, merely reiterated our questions without providing legal authority or supporting argument.[3]  As we have said, this type of "single-sentence, non-supported, and non-elaborated 'argument'" is insufficient and not one we can consider as properly presented for appellate review.  *Jackmore v. Est. of Jackmore*, 145 So. 3d 170, 171 (Fla. 1st DCA 2014) (declining to consider an argument only raised in the summary-of-the-argument section of the initial brief); *see also Henderson v. State*, 569 So. 2d 925, 927 (Fla. 1st DCA 1990) (declining to consider a "perfunctory argument" with "no caselaw or other authority" provided in support).  On review of the supplemental briefing, we now find that Ash has failed to demonstrate reversible error.  We, therefore, grant the motion for rehearing and affirm Ash's judgment and sentence.  *See Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979) ("In appellate proceedings the decision of a trial court has the presumption of correctness and the burden is on the appellant to demonstrate error.").

## II.   *On Motion to Certify Questions of Great Public Importance*

The State asks that we certify two questions of great public importance.  We agree that the question concerning an appellate court's authority to raise claims sua sponte under our current *Anders* procedure is one of great public importance.  Because, here, we pass on the question of the relationship between our *Anders* obligations and our duty as a neutral arbiter, we re-certify the following question, previously certified in *Anderson v. State*, 50 Fla. L. Weekly D26 (Fla. 1st DCA Dec. 18, 2024), as a question of great public importance:

---

[3] We have been unable to find a single case, from anywhere, reversing a judgment or sentence based on the *Faretta* coercion principle used in our original opinion.  We, therefore, do not intend any criticism of appellate defense counsel for failing to provide authority that does not exist.  Nor do we suggest fault for limiting argument to counsel's good faith view of the law and facts.

4

DOES FLORIDA RULE OF APPELLATE PROCEDURE 9.140(G)(2) AND *IN RE ANDERS BRIEFS*, 581 SO. 2D 149 (FLA. 1991), CONTINUE TO ACCORD WITH THE FUNDAMENTAL PRINCIPLES OF APPELLATE REVIEW IN A MANNER SUFFICIENT TO INVOKE THE COURT'S JURISDICTION, AND, IF SO, DO THEY REQUIRE APPELLATE COURTS TO DEPART FROM THEIR ROLES AS NEUTRAL ARBITERS?

AFFIRMED; QUESTION CERTIFIED.

RAY, J., concurs; WINOKUR, J., dissents with opinion.

––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––

WINOKUR, J., dissenting from grant of rehearing.

In its motion for rehearing, the State expresses enthusiastic agreement with the original dissent in this case but fails to identify "with particularity" any points of law or fact that we "overlooked or misapprehended" in our previous decision. Fla. R. App. P. 9.330(a)(2)(A). Motions for rehearing are not a "medium through which counsel may advise the court that they disagree with its conclusion" regarding matters that have "already received the careful attention of the judges[.]" *State ex rel. Jaytex Realty Co. v. Green*, 105 So. 2d 817, 818–19 (Fla. 1st DCA 1958). Accordingly, I disagree that we should grant rehearing in this case in order to affirm the judgment and sentence below. I explain why in this opinion and conclude that we should reverse for resentencing.

I

Ash's court-appointed appellate counsel filed an *Anders* brief under Florida Rule of Appellate Procedure 9.140(g)(2). In the Statement of the Case, counsel noted the numerous "*Faretta*

5

inquiries" that occurred during Ash's trial. Additionally, counsel repeatedly wrote: "In keeping with *Faretta*, *supra*, the court renewed its offer to counsel." Counsel concluded that all of the *Faretta* inquiries were "appropriately conducted." That conclusion was subject to our independent review. *See* Fla. R. App. P. 9.140(g)(2)(A); *In re Anders Briefs*, 581 So. 2d 149, 151 (Fla. 1991).

That review included whether counsel's conclusions were consistent with *Noetzel v. State*, 328 So. 3d 933 (Fla. 2021). In *Noetzel*, our supreme court stated that the requirement to renew the offer of counsel at every critical stage of proceedings does not trigger a need for a new *Faretta* inquiry with each offer. *Id*. at 951–52. The frequency of *Faretta* inquiries here, apparent on the face of the record, suggested inconsistency with *Noetzel*.

Our review led to the discovery of other issues implicating Ash's right to self-representation. We then ordered counsel to file a supplemental brief addressing two issues, one of which involved the number and scope of the *Faretta* inquiries during Ash's trial. Counsel's supplemental brief argued, in pertinent part:

> Defendant Ash maintains the trial court impermissibly interfered with his right to self-represent by the frequency in which it held *Faretta* inquiries; by its questions regarding Ash's technical competence to represent himself; and by its multiple statements declaring that he lacked the technical competence to self-represent. The court's *Faretta*-related actions caused Ash to abandon his right to self-represent several times in the lower court. Reversal is warranted without regard to any type of harmless error analysis.[1]

---

[1] I reject the claim that this issue was not properly before the court. As stated, in an *Anders* case, we are required to "independently review the record to discover any arguable issues apparent on the face of the record" and upon discovery of an arguable issue, to "order briefing on the issues identified by the court." Fla. R. App. P. 9.140(g)(2)(A). That occurred here. The State claims that *Rosier v. State*, 276 So. 3d 403 (Fla. 1st DCA 2019), prohibits us from considering this issue. *Rosier* did not involve an

To address this claim, I discuss the right to proceed without counsel under state and federal law, explain the balance between the right to counsel and the right to proceed without counsel, outline the pertinent facts of Ash's trial, and articulate why I believe the trial court acted improperly.

II

The State notes that no Florida court has ever considered whether a trial court improperly interfered with a defendant's constitutional right to proceed without counsel under the guise of ensuring that the waiver of appointed counsel is voluntary and intelligent. Perhaps so, but it reflects a major deficiency with many cases applying *Faretta*: a persistent presumption that the sole purpose of *Faretta* is to ensure that a court does not permit a defendant to waive the right to counsel (almost always appointed counsel) without determining that the waiver is voluntary and intelligent. *See, e.g., Jones v. State*, 69 So. 3d 329, 335 (Fla. 4th DCA 2011) (claiming that "the procedures set out in . . . *Faretta* are intended to safeguard the criminal defendant's Sixth Amendment right to representation by competent counsel in the criminal prosecution").

But this view misreads *Faretta*. Even a scan of that case shows that it is plainly intended to recognize and protect the right to proceed *without* counsel, not the reciprocal right to *assistance of* counsel. Indeed, the only place *Faretta* even suggests the need for

*Anders* brief and the corresponding procedures under rule 9.140(g)(2)(A), so it does not apply.

The majority finds that Ash merely restated the questions set forth in the court's order. It concludes that we cannot address Ash's argument because he failed to provide legal authority for its argument or "supporting" argument for it. However, it disclaims any criticism of Ash's counsel for this failing, purportedly because no law supports the argument anyway. I reject both claims.

a waiver of counsel is in a single paragraph at the end of a lengthy opinion, where it notes that a defendant choosing to proceed without counsel "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California,* 422 U.S. 806, 835 (1975). Yet in practice, this paragraph has swallowed the rule set forth in the opinion.

This case exposes the problems with this approach. The history of the right to proceed without counsel helps to show why this approach can be misguided.

A

As far back as 1838, the Florida Constitution has contained a right to self-representation. *Compare* Art. I, § 10, Fla. Const. (1838) ("[I]n all criminal prosecutions, the accused hath a right to be heard by himself or counsel, or both") *with* Art. I, § 16, Fla. Const. (2024) ("In all criminal prosecutions the accused . . . shall have the right . . . to be heard in person, by counsel or both"). Our supreme court has held that this clause "embodies an express right to choose the manner of representing oneself—either pro se or through counsel—against criminal charges." *Traylor v. State*, 596 So. 2d 957, 967 (Fla. 1992). "The right to choose one's manner of representation in a criminal trial has been recognized historically by both this Court and our state legislature as an obvious but important state right belonging to the accused." *Id.* While "[e]very person accused of [a] crime has a right to have counsel to aid him in his defense, . . . no one is compelled to employ counsel." *Cutts v. State,* 45 So. 491 (1907); *see also Weatherford v. State*, 79 So. 680, 681–82 (1918) ("A party on trial for a felony may waive his right to have counsel, and may conduct his own defense").

*Traylor* noted that Florida also provides a statutory right to self-representation. 596 So. 2d at 967 n.19. "[A]ny person, whether an attorney or not, . . . may conduct his or her own cause in any court of this state[.]" § 454.18, Fla. Stat. *See also Kahn v. Milon,* 332 So. 2d 149, 150 (Fla. 3d DCA 1976) ("The law of Florida is well established that a party to a cause may act as his own attorney." (citing § 454.18, Fla. Stat.)). Denial of this statutory right of self-

representation is reversible error. *See, e.g., Herskowitz v. Herskowitz*, 466 So. 2d 8, 9 (Fla. 3d DCA 1985) (finding "absolutely no basis" for a ruling "denying the statutory right of self-representation").

Thus, both the right to self-representation and the right to counsel are clearly enshrined in Florida law.

B

In *Adams v. U.S. ex rel. McCann*, the Supreme Court observed that "[t]he right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms" and that "the Constitution does not force a lawyer upon a defendant." 317 U.S. 269, 279 (1942). "He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." *Id.*

The recognition of a constitutional right to appointed counsel in state criminal proceedings in *Gideon v. Wainwright*, 372 U.S. 335 (1963), intensified the tension between the right to counsel and the right to proceed without counsel, leading the Supreme Court to readdress the right to self-representation in *Faretta.* The Supreme Court there outlined the historical basis for the Sixth Amendment right to self-representation, noting that it "finds support in the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged." *Faretta,* 422 U.S. at 818; *United States v. Engel*, 968 F.3d 1046, 1050 (9th Cir. 2020) ("[T]he right to self-representation has a longstanding historical pedigree, having been imported by the Framers from English legal practice." (citing *Faretta*)).

The Court acknowledged that the Sixth Amendment does not contain an express right to self-representation, but found that it, "when naturally read, . . . implies a right of self-representation." *Faretta*, 422 U.S. at 821. "This reading is reinforced by the Amendment's roots in English legal history." *Id.*; *see also United States v. Roof*, 10 F.4th 314, 353–54 (4th Cir. 2021) (noting that the *Faretta* court "found the right [to self-representation] deeply rooted in English common law," and "concluded that 'the right to self-representation—to make one's own defense personally—is . . .

9

necessarily implied by the structure of the [Sixth] Amendment.' It noted that constitutionally significant issues of personal autonomy are at stake." (citations omitted)).

In discussing English common law, the Court identified the Star Chamber as the only known tribunal "[i]n the long history of British criminal jurisprudence" that prohibited self-representation, "adopt[ing] a practice of forcing counsel upon an unwilling defendant in a criminal proceeding." *Faretta*, 422 U.S. at 821. "The common-law rule . . . has evidently always been that 'no person charged with a criminal offence can have counsel forced upon him against his will.'" *Id.* at 826.

The Court also discussed the American colonial period, noting that "[i]n the American Colonies the insistence upon a right of self-representation was, if anything, more fervent than in England." *Id.*; *see also Martinez v. Ct. of Appeal of California, Fourth App. Dist.*, 528 U.S. 152, 165 (2000) ("I have no doubt that the Framers of our Constitution, who were suspicious enough of governmental power—including judicial power—that they insisted upon a citizen's right to be judged by an independent jury of private citizens, would not have found acceptable the compulsory assignment of counsel *by the government* to plead a criminal defendant's case." (Scalia, J., concurring in the judgment) (emphasis in original)).[2]

Additionally, the Court noted that the Judiciary Act of 1789 provided a right to self-representation. *See Faretta*, 422 U.S. at 812–13. Section 35 of that Act provided that "'in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of such counsel . . . .' The right is currently codified in [federal law]." *See* 28 U.S.C. § 1654.

---

[2] While Justice Scalia "might have rested the decision [in *Faretta*] upon the Due Process Clause rather than the Sixth Amendment," he "believe[d] it was correct." *Id.*

10

Accordingly, the Court found that a Sixth Amendment right to self-representation was "supported by centuries of consistent history." *Faretta*, 422 U.S. at 832; *see also Martinez*, 528 U.S. at 156 ("The *Faretta* majority based its conclusion on three inter-related arguments. First, it examined historical evidence identifying a right of self-representation that had been protected by federal and state law since the beginning of our Nation. Second, it interpreted the structure of the Sixth Amendment, in the light of its English and colonial background. Third, it concluded that even though it 'is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,' a knowing and intelligent waiver 'must be honored out of 'that respect for the individual which is the lifeblood of the law.'" (citations omitted)).

Thus, as with Florida law, both the right to self-representation and to counsel are clearly enshrined in Federal law.

## III

Courts must strike a balance between the right to counsel and the correlative right to proceed without counsel.

## A

Whereas the right to appointed counsel safeguards the fairness of a trial, the right to self-representation safeguards the freedom of the defendant to choose. *Compare Gideon*, 372 U.S. at 344 (noting the "safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law") *with Adams*, 317 U.S. at 280 ("to deny [an accused] in the exercise of his free choice the right to dispense with [Constitutional] safeguards . . . and to base such denial on an arbitrary rule that a man cannot choose to conduct his defense before a judge rather than a jury unless, against his will, he has a lawyer to advise him, although he reasonably deems himself the best advisor for his own needs, is to imprison a man in his privileges and call it the Constitution."); *see also Martinez*, 528 U.S. at 160 (noting that the right to self-representation described in *Faretta* was "grounded in part in a respect for individual autonomy" (citing *Faretta*, 422 U.S. at 834)).

11

Stated differently, the defendant's right to conduct his own defense "is based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017) (citing *Faretta*, 422 U.S. at 834); *see also Indiana v. Edwards*, 554 U.S. 164, 186–87 (2008) (Scalia, J., dissenting) ("[T]he dignity at issue is the supreme human dignity of being master of one's fate rather than a ward of the State—the dignity of individual choice.").

"[T]he right to self-representation and the right to representation by counsel, while independent, are essentially inverse aspects of the Sixth Amendment and thus that assertion of one constitutes a de facto waiver of the other." *United States v. Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997). Consequently, *Faretta* requires a court to balance the right to court-appointed counsel with the right to self-representation. *See Knight v. State*, 770 So. 2d 663, 665 (Fla. 2000) (noting the "delicate balance between a defendant's right to counsel and the right to self-representation"); *see also Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) ("A trial court evaluating a defendant's request to represent himself must 'traverse . . . a thin line' between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." (quoting *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990))); *Visage v. State*, 664 So. 2d 1101, 1104 (Fla. 1st DCA 1995) (Benton, J., dissenting) ("It is impossible not to sympathize with the trial judge charged, on one hand, with protecting the accused's right to be represented by counsel, and, on the other, with protecting the accused's right not to be represented by counsel." (citations omitted)).

A trial court must strike this balance even if the court sincerely believes that the defendant would be better off with court-appointed counsel. *See United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017) (noting that "[t]he Sixth Amendment guarantees [the] right to waive counsel and proceed *pro se* even when the court believes that it would not be advisable").

12

As noted above, *Faretta* states that a defendant can choose self-representation and thereby waive the right to counsel only if he makes that decision "with eyes open"—having been made aware of the dangers and disadvantages of self-representation. *See Faretta*, 422 U.S. at 835. However, "[i]f the judge exaggerates either the advantages of being represented or the disadvantages of self-representation, he will be accused of having put his thumb on the scale and prevented the defendant from making an informed *choice*." *United States v. Oreye*, 263 F.3d 669, 672 (7th Cir. 2001) (emphasis supplied); *see also* Mark C. Milton, *Why Fools Choose to Be Fools: A Look at What Compels Indigent Criminal Defendants to Choose Self-Representation*, 54 St. Louis U. L.J. 385, 400 (2009) ("Whether *Faretta's* insistence that defendants 'should' be made aware of the dangers of self-representation requires that trial courts provide an explicit warning to defendants prior to allowing them to elect self-representation has been the subject of much debate. All courts seem to recognize that the dicta in *Faretta* asks trial courts to strike a delicate balance between: 1) *serving as a counselor to defendants* by advising them of the potential pitfalls of self-representation, and 2) *overemphasis of the disadvantages of self-representation, thereby scaring an otherwise pro se prone defendant into acquiescing to court-appointed counsel.*" (footnotes omitted, emphasis supplied)).

B

"[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right, not the competence to represent himself*." *Godinez v. Moran*, 509 U.S. 389, 399 (1993) (emphasis supplied); *see also Hill v. State*, 688 So. 2d 901, 905 (Fla. 1996) ("[A] defendant does not need to possess the technical legal knowledge of an attorney before being permitted to proceed pro se."). Accordingly, judicial probing into the defendant's background and experience with the legal process risks discussion of irrelevant and improper areas of technical competence.

In 1997, our supreme court addressed this risk by excluding technical competence from the proper scope of a *Faretta* inquiry. "[O]nce a court determines that a competent defendant of his or her own free will has 'knowingly and intelligently' waived the right to counsel, the dictates of *Faretta* are satisfied, the inquiry is over,

and the defendant may proceed unrepresented." *State v. Bowen*, 698 So. 2d 248, 251 (Fla. 1997). "*The court may not inquire further into whether the defendant 'could provide himself with a substantively qualitative defense,'* for it is within the defendant's rights, if he or she so chooses, to sit mute and mount no defense at all." *Id.* (citations omitted, emphasis supplied); *see also Weaver v. State*, 894 So. 2d 178, 193 (Fla. 2004) ("The focus of a *Faretta* hearing . . . is whether a defendant is competent to waive the right to counsel, *not* whether he is competent to provide an adequate defense." (emphasis in original)).

Because the proper scope of a proper *Faretta* inquiry does not include technical competence, an inquiry that explores that area is improper. *See McKenzie v. State*, 29 So. 3d 272, 281 (Fla. 2010) ("[W]hether a defendant can prepare an effective legal defense is *not* part of the *Faretta* inquiry" (emphasis in original)).

IV

A

Because appellate courts so often view *Faretta* solely as a requirement of a proper waiver of counsel instead of an informed choice between Sixth Amendment rights, it is no wonder that trial courts often err on the side of providing more frequent and more thorough *Faretta* inquiries than necessary. Yet the balance between the right to counsel and the right to proceed without counsel demonstrates why a court should be circumspect about *Faretta* inquiries. Overuse of them, particularly when accompanied by repeated insistence that the defendant cannot represent himself well enough, can interfere with the right to proceed without counsel by actively dissuading the exercise of the right to self-representation.

In this case, Ash endured at least fourteen *Faretta* inquiries. Because the judge never identified anything that called into question the original *Faretta* inquiry, thirteen of those were unnecessary. *Noetzel* makes this point clear:

[A]bsent a substantial change in circumstances that would cause the trial court to question its original ruling

14

on the defendant's request for self-representation, there is no concomitant requirement to revisit *Faretta* every time the offer of counsel is subsequently renewed and rejected.

28 So. 3d at 951–52.[3]

Some of the *Faretta* inquiries in this case were given just days apart; and on two occasions, Ash was subjected to multiple inquires on the same day. Ash expressed his discomfort with the court's persistent reading of *Faretta* inquiries clear on several occasions:

> Your Honor, I have a question. This isn't a *Faretta* Hearing or *Faretta* Inquiry, so why are we -- I understand that you have to go back over the fact that I'm representing myself, but why do you keep asserting the fact over and over and over and repeatedly? *I already advised that I want to represent myself*.
>
> * * * *
>
> But if all of that was conducted in the *Faretta* Inquiry, *why would we keep going over it when it's already been established*?
>
> * * * *
>
> Honestly, Your Honor, we're wasting time going back and forth with what has changed. I want to represent myself; I'm asserting my right to represent myself.

(emphases supplied). To be sure, the trial court responded to these complaints by indicating that it was required to read an entire

---

[3] *Noetzel* explicitly disapproved this court's decision in *Howard v. State*, 147 So. 3d 1040 (Fla. 1st DCA 2014), where we held that failure to conduct a *Faretta* inquiry at every critical stage was "per se reversible error." 328 So. 3d at 952 n.9.

*Faretta* inquiry every time it renewed the offer of counsel, but as indicated above, the persistent *Faretta* warnings were not required. Ash's responses to the trial court, at the very least, indicated that he objected to the sheer number of *Faretta* inquiries, as well as their lack of necessity.

B

In addition to the repetitive and unnecessary *Faretta* inquiries, the trial court repeatedly asked Ash questions regarding his technical competence to represent himself. The following examples, taken from a single *Faretta* inquiry illustrate the scope of the trial judge's questions about Ash's technical competence:

- "[D]o you know what a voir dire process means?"
- "Do you know what you have to do to select a jury?"
- "Have you studied [the Florida] Rules of Criminal Procedure?"
- "[H]ow many persons would be on, on the jury?"
- "And do you know how many peremptory challenges you'd be entitled to have?"
- "Do you know how many challenges for cause you would have?"
- "Do you know what happens after jury selection; what is the next step?"
- "But do you know the difference between an opening statement and a closing argument during trial?"
- "Do you know what direct examination of a witness is?"
- "Do you know what cross-examination is?"
- "Do you know the Rules of Evidence in the state of Florida?"
- "Do you know what – how to make an objection in court?"
- "Do you know [how to properly preserve errors for appellate review]?"
- "[D]o you know what jury instructions are?"

It appears that the trial court should not have asked *any* of these questions. Even in *Faretta* itself, the Supreme Court criticized the trial court for quizzing the defendant about his

16

knowledge of particular legal matters. The trial court there "inquire[d] into Faretta's ability to conduct his own defense, and questioned him specifically about both the hearsay rule and the state law governing the challenge of potential jurors." 422 U.S. at 808. The Supreme Court rejected such questioning, noting that Faretta's "technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta,* 422 U.S. at 836; *see also Hooks v. State*, 286 So. 3d 163, 169 (Fla. 2019) ("[T]he defendant's understanding of the rules of criminal procedure—is only relevant if assessing the accused's 'technical legal knowledge.' . . . [T]his is clearly an improper consideration." (citations omitted)); *McKenzie*, 29 So. 3d at 282 ("[T]he ability to prepare a competent legal defense and technical legal knowledge (or lack thereof) are *not* relevant issues in a self-representation inquiry" (emphasis in original)); *Hill v. State*, 688 So. 2d 901, 905 (Fla. 1996) ("[T]he judge was not required to give Hill a lesson on how to try a lawsuit before finding that Hill was making a knowing waiver of his right to counsel.").

Just as the trial court's questions regarding technical competence were irrelevant and improper, so too were the court's statements to Ash that he lacked the competence to represent himself. *See McKenzie*, 29 So. 3d at 281 ("[N]either legal knowledge nor legal skills are required as conditions precedent for a defendant to exercise the right to self-representation[.]"); *see also Marquardt v. State*, 156 So. 3d 464, 483 (Fla. 2015) ("Although a defendant ordinarily will lack the skill to conduct the trial as neatly and competently as an attorney, this does not circumscribe the right of self-representation." (citations omitted)). Here is a sampling of the trial court's comments to Ash regarding his inability to represent himself:

- "[I]t's obvious that, to this Court, that you do not have the legal knowledge or training to be able to adequately represent yourself"
- "[Y]ou're not competent, you don't have the legal competence to represent yourself because you don't have the knowledge, training, experience and education"

17

- "[T]he Court makes a specific finding that while the defendant does not have the legal knowledge or training or experience to represent himself"
- "[T]he Court finds that . . . Mr. Ash certainly does not have the legal knowledge to represent himself"
- "[Y]ou certainly do not have the legal experience, you've not graduated from high school, and you don't have any type of legal training that other attorneys involved in the case do have"
- "[Y]ou are certainly not -- you do not have the legal knowledge to represent yourself"
- "[T]he Court finds that the defendant does not have the legal education nor the training to competently represent himself"
- "Because the Court has found previously that because of your age and lack of legal education, you certainly do not have the legal background to adequately represent yourself."
- "And while the Court finds that you do not have the legal training and experience to properly represent yourself"
- "[Yo]u do not have the legal training and experience to represent yourself"
- "So then the Court continues to find that while Mr. Ash does not have the educational background with only an 11th grade education and no formal experience in the law, he does not have that legal background"
- "[T]his Court finds you are not [competent to represent yourself] because of your lack of legal education"

These improper statements also support Ash's claim that the trial court pressured him into electing court-appointed counsel. *See United States v. Hill*, 252 F.3d 919, 928–29 (7th Cir. 2001) ("*Faretta* require[s] courts to respect a litigant's demand for self-determination at the most critical moment in the criminal process. *That right is not honored if judges must depict self-representation in such unremittingly scary terms that any reasonable person would refuse.*" (emphasis supplied)); *see also Damas v. State*, 260 So. 3d 200, 212 n.15 (Fla. 2018) ("That being said, we note that it

was not appropriate for the trial court to reference Damas's 'fail[ure] to demonstrate sufficient understanding of the legal process' as a basis for denying Damas's request to represent himself.").

In addition to improper comments regarding Ash's technical competence to represent himself, the trial court repeatedly reminded Ash that he was young and only had an eleventh-grade education. Some of those questions and comments are listed below:

- "Were you doing well in the 11th grade?"
- "Nineteen [years old]. And you went up to the eleventh grade. All right. Do you know how long a lawyer has to go to school to become a lawyer?"
- "[U]nder the law the issue is not whether you are legally competent to represent yourself, because obviously you're not, a 19-year-old with an 11th grade education does not have the legal knowledge."
- "Eleventh grade. All right. So you did not graduate from high school, correct?"
- "So -- and apparently you, you do remember, then, well how I've told you that, let's see, you've got an 11th grade education; is that correct?"
- "You're 20. And how far did you go in school?"
- "And you have told me previously that you have an 11th grade education, is that correct?"
- "So then the Court continues to find that while Mr. Ash does not have the educational background with only an 11th grade education and no formal experience in the law, he does not have that legal background"
- "But as you know, and, and you, and you have told me many times under oath, you have an 11th grade education, correct?"

In addition, the trial court repeatedly compared Ash's 11th grade education level to the education level of an attorney. Ash's reaction to the court's "findings" that he was incapable of representing himself were summed up by a response to the judge during one of these inquiries: "[Y]ou're continually trying to undermine me and undermine my intelligence by continuously throwing it in my face

that I don't know due process and I don't know these things of the law."

Once again, these irrelevant and improper comments regarding Ash's education level also support his claim that the trial court coerced him into electing court-appointed counsel. *See Bowen*, 698 So. 2d at 252 ("[N]o citizen can be denied the right of self-representation—or any other constitutional right—*because he or she has only a high school diploma*." (emphasis supplied)).

I do *not* claim that a court errs by informing a defendant that he would be better served with counsel. But we should not permit an unrelenting onslaught regarding the defendant's lack of legal knowledge and education to repeatedly declare to the defendant that his exercise of a constitutional right is a poor choice.

V

The improper questions and comments outlined above do not necessarily require reversal. If, despite repeated pressure from the trial judge, a defendant remains steadfast in his desire to elect self-representation, then the defendant might find it difficult to establish that the lower court deprived him of "a fair chance to present his case in his own way." *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984). But if a defendant unequivocally invokes his right to self-representation and later succumbs to the trial court's interference with that right by withdrawing that invocation, then the withdrawal might constitute a constitutional violation. *See cf. Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992) (holding that a defendant can chose between the "equivalent" rights to court-appointed counsel and to self-representation, but that "the defendant is entitled to choose without a thumb on the scale").

A

In this case, Ash initially invoked his right to self-representation on February 5, 2020. Ash proceeded pro se until the start of his first trial on April 12, 2021. After Ash requested court-appointed counsel, the trial court declared a mistrial. Then, on May 17, 2021, Ash elected once again to proceed pro se. That period of self-representation lasted until September 3, 2021; during a first

appearance hearing on that day, Ash elected court-appointed counsel. On November 29, 2021, Ash exercised his right to self-representation. After the jury reached a verdict at his second trial on March 22, 2022, Ash chose court-appointed counsel. Finally, during a pre-sentencing hearing on April 11, 2022, Ash asserted his right to self-representation but withdrew his motion to proceed pro se after the fourteenth *Faretta* inquiry in this case.

Under the unique facts of this case, Ash's final abandonment of his right to self-representation should be attributed to the court's improper statements. *See Hill*, 252 F.3d at 929 ("A defendant bullied or frightened into acquiescing in a lawyer that he would rather do without would be in a much better position to say that the choice was not made knowingly or intelligently."). At that point, not only had Ash been read at least thirteen *Faretta* inquiries, but it was the thirteenth time that the trial court told him that he lacked the technical competence to represent himself. Thus, we could reasonably conclude that Ash was coerced into accepting court-appointed counsel. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 137 (1st Cir. 1985) ("A necessary part of the right of self-representation is that a litigant . . . cannot be coerced into accepting appointed counsel rather than proceeding *pro se*.").[4] We need not reverse Ash's conviction and remand for new trial, but a new sentencing proceeding is called for.

B

I sympathize with trial judges who have suffered reversals because an appellate court ruled that *Faretta* inquiries were not thorough enough or given often enough. But many of those cases are incorrect, and the solution cannot be to read *Faretta* inquiries as often as possible. That said, excessive *Faretta* inquiries are not, by themselves, reversible error. However, a court should not act in a manner that "'risks depriving the defendant of his right to

---

[4] I reject the suggestion that Ash forfeited his right to self-representation by his behavior. The trial court made no finding that Ash engaged in a disorderly, disruptive, or disrespectful manner, and I see no basis to reach that conclusion.

represent himself" *by relentless questioning that ultimately causes the defendant to give up the right he sought to exercise.*" *United States v. Underwood*, 88 F.4th 705, 709 (7th Cir. 2023) (citations omitted) (emphasis supplied). This risk increases when the inquiries are accompanied by inappropriate questions and comments that disparage the exercise of the constitutional right to proceed without counsel. This occurred here.

In a different context, the Supreme Court of Florida noted the importance of ensuring that trial courts act in a manner to "minimize the potential coercive effect on the defendant[.]" *State v. Warner*, 762 So. 2d 507, 513 (Fla. 2000) (internal quotation omitted). The court's actions here were potentially coercive, to say the least. And because the State failed to identify any point of law or fact that the court misapprehended or overlooked in the original opinion, I would deny the State's motion for rehearing and reverse and remand for resentencing.

—————————————————

Jessica J. Yeary, Public Defender, David Alan Henson, Assistant Public Defender, and Megan Lynne Long, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, for Appellee.